CHOUTEAU & VALLE vs. STEAMBOAT ST. ANTHONY.

1. Common carriers may be carriers of money, as well as of goods. This, however, depends upon the usage of the trade. But, where no usage is shown, the receiving the money and agreement of the carrier to deliver it, raise the presumption that such is his customary employment.

2. Where the carrier is prohibited from carrying money, or it is the usage of the trade not to carry money, if a person acquainted with the prohibition or usage deliver money to the carrier, the owners will not be responsible for its loss.

3. Bank bills entrusted to a carrier, are regarded as money.

4. Where the captain of a boat received money to be carried, the presumption is that he was authorized to carry it; and such being the presumption, in an action for its loss, the owners of the boat are *prima facie* liable, he being their agent; and in an action against the boat, it is not necessary to allege any compensation as agreed upon.

5. If the captain of a boat receive money to be carried, although against the usage of the trade, or the orders of the owners, they are still liable, unless they shew that the person delivering the money knew of such usage or orders.

6. A boat is not prohibited by the act of Congress from taking a letter containing bank notes, if the contents of the letter relate only to the remission of the notes—and such is the presumption if no evidence of its contents be given.

## APPEAL from St. Louis Court of Common Pleas.

DARBY & HILL, *for Appellant*.

GAMBLE & BATES, *for Appellee, insist*:

1. No contract is alleged which could sustain a suit even against the captain individually; for it is a naked contract, without consideration. Nothing was to be paid for carrying the money or the letter. Nor is there any charge of negligence.

2. There is no good breach alleged; the bank notes were delivered to the captain, "sealed up in a letter;" and the complaint contains no charge that the notes were embezzled, or the letter violated, or not delivered to its address. The only breach is, that the boat did not carry to William Pell $420, in Kentucky bank notes—a duty that had never been assumed either by the captain or the boat.

3. If the matters stated show any contract to carry the letter, it was the individual contract of the captain, for which he alone should be sued.

4. Even if the captain had contracted for the boat, in its name, and for a consideration, the boat would not be bound, for such contract is unlawful. The Post Office Law (sec. 10, 13, 5 L. U. S., p. 736) forbids the conveying of letters by boats, under a penalty. It was not within the scope of the captain's authority to break the penal laws and thereby subject the boat and its owners to penalties. See 10 Mo. R., 134, Price vs. Thornton, et al., and the cases there cited; and especially Abbott on Shipping.

NAPTON, J., *delivered the opinion of the Court.*

This was a statutory proceeding, instituted against the steamboat St. Anthony, for damages on a contract of affreightment made with the master.

The complaint alleged in substance that the master of the steamboat St. Anthony contracted with Chouteau & Valle to carry the sum of five hundred and seventy-two dollars in money, in bank notes of the banks of Kentucky, from St. Louis to a place called Pell's Landing, on the Ohio river, and deliver the same to William Pell;—that in pursuance of this contract, they delivered to said boat, and put on board the said boat, the aforesaid sum of money, which was received and put into the hands of the clerk, sealed up in a letter addressed to Mr. William Pell, Pell's Landing, Ills. The complaint alleges further, that the said boat did not convey and deliver to the said William Pell, a part of the said sum of money, to-wit., $420.

To this complaint, a demurrer was filed and sustained by the court, and the only question is upon the sufficiency of the complaint.

Since it does not appear upon what ground the demurrer was sustained, we will consider each of the objections taken by the counsel, *seriatim*.

The first objection made to the complaint of Chouteau & Valle is, that the contract, as stated, is without consideration—it not being averred that any freight was charged or agreed to to be paid for the transportation of the money.

It is proper to observe, before noticing this objection, that common carriers may be carriers of *money*, as well as of goods. This, however, depends upon the usage of the trade, and where no usage to the contrary is shown, and the carrier receives the money and undertakes to deliver it, the presumption will be that such is his customary employment. The general principles on this subject are succinctly stated by Judge Story in his treatise on Bailments, for which he refers to numerous authorities. "If it is known that the carrier does not carry money, but goods only, then he will not be liable for money which is carried without his consent or sanction, and is lost. And if the master, or other agent of a carrier, ship or steamboat, is prohibited from carrying money for hire, on account of the owners, but is allowed to carry it on his own account, or if that is the course of the trade or employment, then the owner will not be responsible for the loss of any money so taken by the master for hire; and therefore, where it is the usage of the owners of steamboats on a particular line not to carry money or bank notes for hire, if either money or bills are entrusted to the master of one of the boats by persons acquainted with the usage, the owners of the boat will not be liable for the loss, as the masters are the general agents of the owners." Story on Bailments, sec. 530. Again, in sec. 495, Judge Story says, "A com-

mon carrier may be of money as well as of goods, and he will be bound as such for the carriage of money as well as of goods, if such is his own practice or the common usage of the business in which he is engaged." It is also held, that bank bills are money, and as such, may be levied on under execution. 12 John. R., 220; 11 John. R., 109.

The defendants, then, being *prima facie* liable for the carriage of bank bills, as well as other goods, it was unnecessary for the complaint to set forth any express agreement for compensation. If the carrier be in the habit of transporting goods for hire, the agreement to pay the usual freight is implied by the delivery of the goods to him. He is authorized to charge and recover the usual or reasonable compensation, and he is liable for the loss of the goods, as though the freight had been agreed on or paid. 2 Kent C., 484; 12 J. R., 220; Sewell vs. Allen, 6 Wend., 334.

Another objection to this complaint is, that the breach alleged is insufficient, because it does not state that the letter was not delivered, or that it was broken open and its contents, or a portion of them, embezzled. The breach alleged in the complaint is, that the steamboat did not deliver a portion of the money entrusted to it, according to the directions of Chouteau & Valle, and according to the agreement of the master.— There is no complaint in relation to the letter ; if there had been, it is doubtful whether such a breach would have been good. The breach is, for the non-delivery of the money, and not of the letter.

It is also objected, in the third place, that the contract, if binding, is the individual contract of the captain of the boat. This may be so, if such be the usage of the trade, or if such was the particular custom of this boat, and that custom was known to the complainants. But *prima facie* freight belongs to the owner, and not to the master; and every article put on board, whether money or goods, is of right subjected to the payment of freight. "The master of a general ship or of one who is in the habit of carrying freight or passengers for hire, for the benefit of the owners, is their general agent as to the usual employment of the ship.— And if he receives goods or passengers on board for freight or transportation, although contrary to the express directions of the owners, they are liable for his contracts, unless the other party knew or had reason to believe he was exceeding his powers." Sewall vs. Allen, 6 Wend., 334.

A fourth objection is, that the contract was unlawful, being prohibited by the laws of the United States regulating the Post Office Department. (5 L. U. S., sec. 10, 13, p. 736.) In the case of Dwight vs. Brewster

(1 Pick. R., p. 50) this point was very fully considered by the Supreme Court of Massachusetts. In that case, a sealed package of money was given to the driver of a stage coach, who was also one of the proprietors and a mail contractor. The proprietors, who were defendants in the action, resisted the claim on the ground that the taking of small packages was an affair of drivers, who receive the compensation, and that they had also advertised that all baggage should be at the risk of the owners. But the principal ground of defence was, that the laws of the United States had made it unlawful for a carrier of the mail to take any letter or packet and deliver it to the person to whom it was sent, and denounced heavy penalties against such conduct. It did not appear in the case that any thing was written in the letter. The court said, "A letter is a message in writing; a packet is two or more letters under one cover. The merely covering a parcel of gloves or other merchandize with paper, and directing it to the person to whom it is sent, would not make such parcel a letter; nor is there any difference between such parcel and one containing bank notes."

But the court, in that case, further held, that although the bank notes had been enclosed in a letter, yet, if the letter related to the package, and was directed to the person to whom the notes or package was to be delivered, the conveyance of such a letter was not within the spirit and meaning of the act of Congress. If nothing was proven or known in relation to the contents of the letter, the presumption of law was that it related to the parcel sent.

The other Judges concurring, the judgment is reversed and the cause remanded.