**NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL–CIO, Plaintiff,**

v.

**INDEPENDENT POSTAL SYSTEM OF AMERICA, INCORPORATED,**

and

**Thomas M. Murray, Individually and as President of Independent Postal System of America, Incorporated, Oklahoma City, Oklahoma.**

Civ. No. 71–757.

United States District Court,
W. D. Oklahoma,
Civil Division.

Dec. 15, 1971.

Mozart G. Ratner, Washington, D. C., Burck Bailey, Oklahoma City, Okl., for plaintiff.

Keith McMillin, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The Plaintiff, a National labor organization representing approximately 200,000 letter carriers, brings this suit for injunctive relief and declaratory judgment against the Defendants asserting that Defendants are violating the United States Postal Laws to the injury of the members of Plaintiff's organization. The alleged violation is that Defendants are offering to deliver addressed Christmas cards within certain cities and in this connection have printed and offered for sale and have sold their private postage stamps for use in the delivery of said addressed Christmas cards.

Upon Application of Plaintiff the Court granted a Temporary Restraining Order against these alleged activities of the Defendants, immediately set Plaintiff's Application for a Preliminary Injunction for hearing and pursuant to Rules 65(a) (2) and 57, Federal Rules of Civil Procedure, 28 U.S.C.A. ordered the trial of the action on the merits to be advanced and consolidated with the hearing on Plaintiff's Application for Preliminary Injunction. The Defendants have answered the Complaint. The United States of America has been permitted to file an amicus curiae brief herein. Such hearing has been conducted, all evidence of both sides has been received and arguments heard whereupon the Court for good cause shown and by agreement extended the Temporary Restraining Order (as modified by agreement of the parties) for an additional ten days pending the filing of this Memorandum Opinion and decision in the case on the merits.

Jurisdiction is present under 28 U.S.C.A. § 1331(a) as Plaintiff's suit arises

under the Constitution and laws of the United States, under 28 U.S.C.A. § 1332(a) and (c), as Plaintiff is a National labor organization with its principal place of business in Washington, D. C., Defendant Independent Postal System of America, Incorporated is a Delaware corporation with its principal place of business in Oklahoma, Defendant Murray is a citizen of Oklahoma, and in both Statutory instances, the value of the right involved is more than $10,000. Jurisdiction is also present under 28 U. S.C.A. § 1339, which provides that the Court shall have original jurisdiction of any civil action arising under any Act of Congress relating to the Postal Service, without regard to the amount in controversy. See Straus v. Gilbert, 293 F. Supp. 214 (D.C.N.Y.1968).

Generally, the issues joined herein by the parties are:

1. Plaintiff's standing to sue,

2. Whether the United States Government has a monopoly to handle letters by the mails,

3. If such monopoly exists, whether Defendants' announced operation involving Christmas cards is in violation thereof,

4. The power of the Court to grant the requested injunctive relief,

5. The nature of any injunctive relief granted, and,

6. Whether Plaintiff is entitled to the requested declaratory judgment.

The parties are in complete disagreement regarding issues (1), (3) and (4). As to issue (2) the parties agree that the United States Government has a monopoly for the handling of letters through the mails but disagree as to whether a Christmas card handled in the manner proposed by Defendants is a letter within such monopoly. As to issue (5), after an agreed modification, this issue is left to the Court as is issue (6).

■ Returning to issue (1), the Court finds and concludes that the Plaintiff has standing to bring this suit.

It is believed that the recent case of Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S. Ct. 827, 25 L.Ed.2d 184 (1970) announces the applicable law and that the Plaintiff must meet the test announced therein. Such case provides that standing to sue exists if the challenged action has caused a plaintiff injury in fact, economic or otherwise, and if the interest sought to be protected by a plaintiff is arguably within the zone of interests to be protected or regulated by the statute or constitutional guaranty in question.

Plaintiff's evidence convinces the Court that if Defendants' announced operation is allowed to proceed or continue in the approximately forty-five cities involved, (assuming for the purpose of considering this issue that such operation would be contrary to law) that the approximately two-hundred thousand members represented by Plaintiff's organization would be injured in fact by a significant loss of work time, overtime, employment opportunities, future pension and insurance benefits and in morale. The Court is also convinced that the interest sought to be protected by the Plaintiff is arguably within the zone of interests to be protected or regulated by the Postal Laws which it is alleged Defendants are now violating or propose to violate. It is obvious that Plaintiff's interest sought to be protected is essentially the employment of its members in the United States Postal Service. It is equally obvious that the primary purpose of the Postal Laws of the United States and the system created and regulated by the same is to afford good, safe, speedy and reliable postal service for the use and convenience of all members of the public in all parts of the land. But according to *Data Processing* the interest sought to be protected by a Plaintiff need not be the primary purpose of the Statutes or Constitutional provisions involved. It is only necessary that such interest is *arguably* within the zone of interests to be protected or regulated by such Statutes or Constitutional provi-

sions. Without question the Postal Laws *regulate* the employment opportunities and practices of the members of Plaintiff's organization. 39 U.S.C. §§ 1001 et seq. and 1201 et seq. It would seem that this alone is enough to satisfy this facet of the test. But, if not, the Postal Reorganization Act of 1970 establishing the United States Postal Service as an independent establishment of the Executive Branch of the Government has recognized and seeks to protect (as well as regulate) the interests and employment opportunities of the Postal employees including those represented by Plaintiff. For example, an Advisory Council has been created with employee representation thereon. 39 U.S.C. § 206. Two entire chapters of the new law deal with employment within the Postal Service and employee-management agreements. 39 U.S.C. § 1001 et seq. and 39 U.S.C. § 1201 et seq. Recognition has been granted to labor organizations and bargaining units and agreements. 39 U.S.C. §§ 1202, 1203 and 1206. Thus, the Court concludes that the test of *Data Processing* has been met by the evidence and applicable law and Plaintiff has standing to bring this suit.

■ Although whether Plaintiff is a real party in interest herein was not raised by the pleadings prior to trial it was mentioned by Defendants in oral arguments to the Court after trial on the merits and due to the exigencies of this litigation, the Court will consider the same as if properly raised. As the Court has concluded that Plaintiff has standing to sue herein, Defendants' suggestion that it is not a real party in interest is wholly without merit. See United Federation of Postal Clerks, AFL–CIO v. Watson, 133 U.S.App.D.C. 176, 409 F.2d 462 (1969), cert. den. sub nom. Blount v. United Federation of Postal Clerks, AFL–CIO, 396 U.S. 902, 90 S.Ct. 212, 24 L.Ed.2d 178 (1969).

As to issue (2) the parties have agreed in open Court that the Congress has exercised its right to create a postal monopoly as to letters. Even though Congress has not seen fit to express itself in such outright fashion by the Postal Laws it has enacted, the Legislative intent in this regard is supported not only historically but by Statute. It is appropriate to first note that Article I, Section 8, Clause 7 of the United States Constitution gives Congress the power to establish Post Offices and post Roads. Case law in interpreting postal legislation through the years has held that the business of carrying letters belongs *exclusively* to the National Government. Blackham v. Gresham, 16 F. 609 (C.C.S.D.N.Y.1883). And that a Governmental *monopoly* exists as to letters or packets of letters. Williams v. Wells Fargo & Co. Express, 177 F. 352 (Eighth Cir. 1910). Also see United States v. Easson, 18 F. 590 (S.D.N.Y. 1883).[1] The United States Postal Service monopoly with regard to letters is established and its limits defined by two Statutes. 39 U.S.C.A. § 601 and 18 U.S.C.A. § 1696. 39 U.S.C.A. § 601, a civil Statute, establishes a method by which a letter may be lawfully carried out of the mails and 18 U.S.C.A. § 1696, a criminal Statute, makes unlawful any other method of carrying letters outside the mails, specifically referring to 39 U.S.C.A. § 601. These Statutes prescribe precisely the *only way* by which one *may* legally carry letters outside the mails. Thus, 39 U.S.C.A. § 601, supported by its criminal counterpart 18 U.S.C.A. § 1696, establishes a letter monopoly in the Federal Government. In passing it is appropriate to note that Defendants are not claiming by their announced operation regarding Christmas cards to come under the exception to the letter monop-

[1]. Postal regulations through the years have recognized such monopoly. The current regulation (39 C.F.R. Part 152) reads in part as follows:

"PART 152—WHO MAY CARRY LETTERS

The Postal Service has a monopoly over the transportation of letters for others over post routes. . . ."

oly of the Government expressed in 39 U.S.C. § 601. Thus, it is not only agreed between the parties but otherwise established by law that indeed the United States Government has legally established a monopoly in the United States Postal Service for the handling of letters subject only to the exception in 39 U.S.C. § 601 where it has seen fit to allow the private carriage of letters on certain specified terms.

As to this issue, however, the disagreement of the parties is whether a Christmas card carried as announced by Defendants is a letter within the meaning of the Government's letter monopoly. The evidence discloses that by National advertising in the fall of this year the Defendants have offered their five-cent private postage stamps for sale to anyone for use on Christmas cards which cards the Defendants for one of such stamps on each card agree to deliver within the cities in which they do business. No restrictions are stated in such advertising as to who may be the senders of such cards, whether the envelopes be sealed or not, or addressed or not, or whether the Christmas messages be entirely printed or not, or that they may not contain personal messages. It was not stated that Defendants would maintain control over the contents of the Christmas messages. At the trial, however, the Defendants announced in testimony by their President that the initial Nationally advertised offer has been changed. The public has not been advised of this change as of the time of this trial. The public has bought Defendants' private postage stamps according to the evidence presented herein. Under the changed operation of Defendants as announced at the trial and as to Christmas cards, the Defendants would only receive such Christmas cards from business or commercial concerns for mass delivery. No other senders would be accepted. The envelopes must be open. The Christmas greeting must contain no personal message. The Christmas card has to be printed matter entirely and Defendants would maintain

control over the message or contents of the Christmas cards. The Christmas cards could be addressed or unaddressed.

The Plaintiff contends that under either operation the Christmas cards are letters and that both operations violate the Governmental letter monopoly. Defendants in their argument before the Court acknowledge that the Nationally advertised operation would probably violate the Governmental letter monopoly but urge that the changed plan of operation does not involve a letter and therefore does not violate the Governmental letter monopoly. The Court agrees with the Plaintiff and disagrees with the Defendants. The Court finds and concludes that both operations involve letters and both operations violate the Governmental letter monopoly as the same has been established by law.

Congress apparently has not undertaken to define what a letter is in the Postal Laws. However, Congress has provided that the Postal Service shall have the power to adopt such rules and regulations as it deems necessary to accomplish the objectives of the Postal Reorganization Act. 39 U.S.C. § 401(2). The Postmaster General had this same power under earlier law. 39 U.S.C. § 501. Postal Regulations before and after the Postal Reorganization Act of 1970 have undertaken to define a letter within the meaning of the Governmental letter monopoly. The current regulation (39 CFR 152.2 as retained as an uncodified regulation by Federal Register, Vol. 35, No. 248—Wednesday, December 23, 1970, page 19399) reads as follows:

152.2 What are letters.

(a) *Definition of letters.* (1) A letter is generally defined as a message in writing and may be written in any language, or in a code. It need not be in handwriting but may be written by a system of checking from a list of printed statements or punching holes or by point print or in raised characters used by the blind.

(2) For purposes of the exercise of the postal monopoly, the term letters

may include circulars, as the term circular is defined to be a printed letter which is being sent to several persons in identical terms.

(3) A writing is not a letter unless addressed to or intended for some particular person or concern.

(4) In addition to communications of a purely personal nature, the word letter includes any matter conveying live, current information between the sender and the addressee. If the sender expects or intends the addressee to act, rely or refrain from acting on the information, the information is live and current.

(5) A letter may be in a sealed envelope, in an unsealed envelope or not in an envelope.

(6) Factors of weight and size do not exempt letters from being subject to the postal monopoly.

(7) A telegraphic message is not a letter.

Case law has defined a letter in many instances.

"A letter is a message in writing. A packet is two or more letters under one cover." Dwight v. Brewster, 18 Mass. (1 Pick.) 50; Chouteau v. Steamboat St. Anthony, 11 Mo. 226 at p. 230

"[A] 'letter' is defined as a 'written or printed message.'" United States v. Britton, 17 F. 731, 732 (Com.Ct. Ohio 1883)

"The strict etymological meaning of a 'letter' would be an epistle, a written message." Buchwald v. Buchwald, 175 Md. 103, 199 A. 795 (1938)

"letter—a dispatch or epistle; a written or printed message; a communication in writing from one person to another at a distance." Black's Law Dictionary, 4th Ed., p. 1048

"letter—a written or printed message intended for the perusal only of the person or organization to whom it is addressed." Webster's Third New International Dictionary, p. 1298

A Christmas card has been defined:

"Christmas card—an ornamental card with a greeting sent at Christmas." Webster's Third New International Dictionary

The Court finds and concludes that a letter within the meaning of the Governmental letter monopoly is a message in writing, printed or otherwise in whole or in part, addressed to a particular person or concern and may be in a sealed or unsealed envelope or not in an envelope at all. The Court further finds and concludes that the ordinary Christmas card when addressed to a particular person or concern is a letter within the meaning of the above definition. Either operation which the Defendants have announced violates the Governmental letter monopoly within the United States Postal System as the same has been established by law. Defendants' announced carriage of Christmas cards for their five-cent private postage stamp where the same are addressed to a particular person or concern and whether sealed or not therefore constitutes the carriage of a letter and is in violation of the Postal Laws of the United States and the Governmental letter monopoly.

Defendants therefore are violating or threaten to violate the Postal Laws of the United States and the Governmental letter monopoly created thereby to the injury of Plaintiff and those it represents whose interests are arguably within the zone of interests to be protected by said Postal Laws.

But by issue (4) Defendants contend that this Court is without power to issue an injunction against them for to do so

would be to enjoin Defendants from the commission of a crime, citing United States v. Jalas, 409 F.2d 358 (Seventh Cir. 1969); United States v. Claflin, 97 U.S. 546, 24 L.Ed. 1082 (1878) and In Re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895). The crime is said to be 18 U.S.C. § 1696 which reads in part as follows:

"1696. Private express for letters and packets (a) Whoever establishes any private express for the conveyance of letters or packets, or in any manner causes or provides for the conveyance of the same by regular trips or at stated periods over any post route which is or may be established by law, or from any city, town, or place to any other city, town, or place, between which the mail is regularly carried, shall be fined not more than $500 or imprisoned not more than six months, or both.

This section shall not prohibit any person from receiving and delivering to the nearest post office, postal car, or other authorized depository for mail matter any mail matter properly stamped.

(b) Whoever transmits by private express or other unlawful means, or delivers to any agent thereof, or deposits at any appointed place, for the purpose of being so transmitted any letter or packet shall be fined not more than $50.

(c) This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation, or by special mes-senger employed for the particular occasion only. Whenever more than twenty-five such letters or packets are conveyed or transmitted by such special messenger, the requirements of section 601 of title 39, shall be observed as to each piece."

The Court will agree that both of Defendants' announced operations violate the above criminal Statute. The Defendants are or would be a "private express." United States v. Easson, *supra*. Christmas cards are letters when addressed to a particular person or concern as above determined. Defendants' method or methods of operation would be "by regular trips or at stated periods" over "post routes" which are established by law. See United States v. Easson, *supra*, and Blackham v. Gresham, *supra*. Defendants' operations do not or would not constitute deliveries of mail matter to the nearest post office, transmission of letters without compensation or by special messenger employed for the particular occasion only.

But the Court need not enjoin Defendants on the basis of said criminal Statute. Defendants are subject to injunction for violating the civil Postal Laws which have created a letter monopoly in the Government when to do so injures the Plaintiff. It matters not that what Defendants do or propose to do violates both civil and criminal Statutes. The violations of civil law would support injunctive relief.[2] Moreover, an exception exists under the doctrine that Courts have no power to enjoin the commission of a crime. The Court in United States v. Jalas, *supra*, said in this connection.

2. The injunctive powers of the Court extend to enforcement of Statutory obligations, where the other traditional elements of equity, irreparable injury and inadequate remedy at law, are present. 27 Am.Jur.2d, Equity § 55, at p. 577. Defendants' Statutory obligation when carrying letters out of the mail is to do so in accordance with 39 U.S.C. § 601. Plaintiff will suffer irreparable injury and has no adequate remedy at law against Defendants' announced operation in violation of 39 U.S.C. § 601. Further, it is clear that equity extends to cases involving tortious conduct, 27 Am.Jur.2d, Equity § 67, at pp. 590–591, especially where the conduct is of a continuous and recurring nature, 27 Am.Jur.2d, Equity, § 56, p. 578.

"Historically this doctrine has been subject to exception in only three general situations: national emergencies, widespread public nuisances, and where a specific statutory grant of power exists."

The Court is of the opinion and finds and concludes that Defendants' illegal operations in forty-five cities across the country and admittedly which this year could involve as many as twenty-five million Christmas cards would constitute a "widespread public nuisance" and therefore is subject to injunction notwithstanding the criminal nature of such operations.

The Court therefore finds and concludes that the Plaintiff is entitled to a permanent injunction by which the Defendants are enjoined from selling or offering for sale private postage stamps for use on Christmas cards addressed to a particular person or concern and Defendants are further enjoined from delivering Christmas cards addressed to a particular person or concern except as permitted by 39 U.S.C. § 601 and that such a permanent injunction should issue from this Court in this case. The Court further finds and concludes that the Defendants should be mandatorily enjoined to immediately inform all of the agents, employees and franchisees of Independent Postal System of America, Incorporated of the Permanent Injunction issued herein.

As an actual controversy exists within the jurisdiction of this Court, Plaintiff is also entitled to a Declaratory Judgment pursuant to 28 U.S.C.A. § 2201 that both of the Defendants announced operations involving the sale or offering for sale of Defendants' private postage stamps for use on Christmas cards addressed to a particular person or concern which said Defendants agree to deliver are declared to be unlawful as being in violation of the Postal Laws of the United States, 39 U.S.C. § 1 et seq., and the Rules and Regulations promulgated thereunder.