470 F.2d 265
 NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO, Plaintiff-Appellee,
v.
INDEPENDENT POSTAL SYSTEM OF AMERICA, INCORPORATED, and
Thomas M. Murray, Individually and as President of
Independent Postal System of America,
Incorporated, Defendants-Appellants.
 No. 72-1137.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 6, 1972.
 
 James van R. Springer, Washington, D. C. (Mozart G. Ratner and Burck Bailey, Oklahoma City, Okl., on the brief), for plaintiff-appellee.
 Timothy J. May and David C. Todd, Washington, D. C. (Patton, Blow, Verrill, Brand, Boggs & May, Washington, D. C., on the brief), for defendants-appellants.
 Harlington Wood, Jr., Acting Asst. Atty. Gen., William R. Burkett, U. S. Atty., Alan S. Rosenthal and Michael H. Stein, Attys., Department of Justice, for the United States, amicus curiae.
 Before LEWIS, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 The parties to this controversy are the National Association of Letter Carriers, AFL-CIO, a national union of city letter carriers, and the Independent Postal System of America, Incorporated, a private corporation, and its president, Thomas M. Murray. The National Association filed a declaratory judgment action seeking injunctive relief against the Independent Postal System and its president. The gist of the complaint was that the defendants proposed to sell their own postage stamps and themselves deliver individually addressed Christmas cards in envelopes bearing those stamps, all of which it was alleged was in violation of the applicable law granting the United States a monopoly in the delivery of "letters." The relief prayed for was an injunction enjoining such action by the defendants.
 
 
 2
 Upon hearing, the trial court permanently enjoined defendants from selling or offering for sale private postage stamps for use on Christmas cards addressed to a particular person or concern and from delivering the proposed Christmas cards except as permitted by 39 U. S.C. Sec. 601, and the defendants now appeal. For a more detailed statement of the case, see the memorandum opinion of the trial court, appearing as National Association of Letter Carriers, AFL-CIO v. Independent Postal System of America, Incorporated, 336 F.Supp. 804 (W.D.Okl.1971).
 
 
 3
 The issues to be resolved on appeal are essentially two: (1) Is the Christmas card which the defendants proposed to deliver a "letter" as such is defined by applicable statutes and postal regulations and (2) does the National Association, the plaintiff, have standing to maintain this particular proceeding and, as a corollary thereof, under the statutes relied on does the plaintiff have a right to injunctive relief? We shall consider these matters in that order.
 
 
 4
 Counsel are in agreement that under 39 U.S.C. Sec. 601 and 18 U.S.C. Sec. 1696, the so-called "private express statutes," the United States has a monopoly on the handling of "letters" through the mails and that the defendants may not deliver "letters," except in conformity with certain conditions set forth in 39 U.S.C. Sec. 601. However, defendants contend that neither of these statutory prohibitions applies to their proposed delivery of Christmas cards, because their "cards" are not "letters." The plaintiff, in turn, contends that the Christmas cards which the defendants propose to deliver are "letters." Let us examine the defendants' proposed operation a bit more closely.
 
 
 5
 The Independent Postal System of America, a private corporation, began operation in 1968 and by 1971 was functioning in cities throughout the United States. Until the events which gave rise to this litigation, the Postal System had limited its operation to delivery of parcels, newspapers, magazines and unaddressed bulk matter, such as advertising circulars and catalogues. Beginning in late 1971, however, the Postal System initiated a drastic expansion of its operation, announcing to the public that it would sell its own postage stamps and deliver individually addressed printed Christmas cards in unsealed envelopes bearing those stamps in 45 major metropolitan regions or cities. It is this particular operation which the plaintiff seeks to enjoin.
 
 
 6
 More specifically, the defendants proposed to deliver, through the use of "mailmen" dressed in traditional mailmen's garb, printed Christmas cards for business entities to their customers and associates. The cards would contain no handwriting or typewriting, nor any personal message, and would contain only the usual form of a printed Christmas salutation. The card would be carried in an envelope which would bear the name and address of the recipient, and would be unsealed. The envelope would not bear United States postage, but would bear a 5cents stamp printed by the defendants. It was the defendants' evidence that they expected to deliver between five and twenty-five million such cards in forty-five cities where they operate. So, as indicated, the precise issue is whether the Christmas card which the defendants proposed to deliver in the manner set forth above is a "letter" within the meaning of the applicable statutes and postal regulations. In our view, the answer to this question is to be found in the statutes and regulations themselves. Reference thereto at this juncture is therefore appropriate.
 
 
 7
 The so-called private express statutes with which we are here concerned are 18 U.S.C. Sec. 1696 and 39 U.S.C. Secs. 601 and 604. The former provides as follows:
 
 
 8
 "Private express for letters and packets
 
 
 9
 "(a) Whoever establishes any private express for the conveyance of letters or packets, or in any manner causes or provides for the conveyance of the same by regular trips or at stated periods over any post route which is or may be established by law, or from any city, town, or place to any other city, town, or place, between which the mail is regularly carried, shall be fined not more than $500 or imprisoned not more than six months, or both.
 
 
 10
 "This section shall not prohibit any person from receiving and delivering to the nearest post office, postal car, or other authorized depository for mail matter any mail matter properly stamped.
 
 
 11
 "(b) Whoever transmits by private express or other unlawful means, or delivers to any agent thereof, or deposits at any appointed place, for the purpose of being so transmitted any letter or packet, shall be fined not more than $50.
 
 
 12
 "(c) This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation, or by special messenger employed for the particular occasion only. Whenever more than twenty-five such letters or packets are conveyed or transmitted by such special messenger, the requirements of section 601 of title 39, shall be observed as to each piece."
 
 
 13
 Section 601 of 39 U.S.C. provides as follows:
 
 
 14
 "Letters carried out of the mail
 
 
 15
 "(a) A letter may be carried out of the mails when-
 
 
 16
 (1) it is enclosed in an envelope;
 
 
 17
 (2) the amount of postage which would have been charged on the letter if had been sent by mail is paid by stamps, or postage meter stamps, on the envelope;
 
 
 18
 (3) the envelope is properly addressed;
 
 
 19
 (4) the envelope is so sealed that the letter cannot be taken from it without defacing the envelope;
 
 
 20
 (5) any stamps on the envelope are canceled in ink by the sender; and
 
 
 21
 (6) the date of the letter, of its transmission or receipt by the carrier is endorsed on the envelope in ink.
 
 
 22
 "(b) The Postal Service may suspend the operation of any part of this section upon any mail route where the public interest requires the suspension."
 
 
 23
 Section 604 of 39 U.S.C. provides as follows:
 
 
 24
 "Seizing and detaining letters
 
 
 25
 "An officer or employee of the Postal Service performing duties related to the inspection of postal matters, a customs officer, or United States marshal or his deputy, may seize at any time, letters and bags, packets, or parcels containing letters which are being carried contrary to law on board any vessel or on any post road. The officer or employee who makes the seizure shall convey the articles seized to the nearest post office, or, by direction of the Postal Service or the Secretary of the Treasury, he may detain them until 2 months after the final determination of all suits and proceedings which may be brought within 6 months after the seizure against any person for sending or carrying the letters."
 
 
 26
 The codified Regulations of the United States Postal Service provide as follows in 39 C.F.R. Part 152:
 
 
 27
 "The Postal Service has a monopoly over the transportation of letters for others over post routes. * * *"An uncodified Regulation[1] of the United States Postal Service defines "letters" for the purposes of the postal monopoly as follows:
 
 
 28
 "(a) Definition of letters
 
 
 29
 (1) A letter is generally defined as a message in writing and may be written in any language, or in a code. It need not be in handwriting but may be written by a system of checking from a list of printed statements or punching holes or by point print or in raised characters used by the blind.
 
 
 30
 (2) For the purposes of the exercise of the postal monopoly, the term letters may include circulars, as the term circular is defined to be a printed letter which is being sent to several persons in identical terms.
 
 
 31
 (3) A writing is not a letter unless addressed to or intended for some particular person or concern.
 
 
 32
 (4) In addition to communications of a purely personal nature, the word letter includes any matter conveying live, current information between the sender and the addressee. If the sender expects or intends the addressee to act, rely or refrain from acting on the information, the information is live and current.
 
 
 33
 (5) A letter may be in a sealed envelope, in an unsealed envelope or not in an envelope.
 
 
 34
 (6) Factors of weight and size do not exempt letters from being subject to the postal monopoly.
 
 
 35
 (7) A telegraphic message is not a letter."
 
 
 36
 It was in this general setting that the trial court found that the Christmas card which the defendants proposed to deliver was a letter and concluded that to carry such would be in violation of the Postal Laws of the United States and the governmental letter monopoly. For a detailed statement of the trial court's findings and conclusions in this regard, see again its memorandum opinion. It is sufficient here to simply state that in our considered view the trial court's findings and conclusions concerning this particular matter find ample support in the record and under the applicable statutes and regulations. Accordingly, on review such will not be disturbed by us.
 
 
 37
 There remains the question of standing and the related issue of whether the plaintiff is entitled to injunctive relief. Addressing ourselves first to certain preliminaries, it is agreed that the trial court had jurisdiction of the subject matter. Section 1339, 28 U.S.C., provides that the federal district courts shall have original jurisdiction "of any civil action arising under any Act of Congress relating to the postal service." Additionally, it is clear to us that the plaintiff can maintain a proceeding to protect the employment interests of its members. Under the Postal Reorganization Act of 1970, any labor union representing postal service employees is empowered to "sue * * * as an entity and in behalf of the employees whom it represents in the courts of the United States." 39 U.S.C. Sec. 1208(c). See also NAACP v. Button, 371 U.S. 415, 83 S. Ct. 328, 9 L.Ed.2d 405 (1963).
 
 
 38
 Proceeding then to the question of standing, the recent case of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), sheds much light on the present controversy. Appearing therein is the following pertinent comment:
 
 
 39
 "* * * Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' Baker v. Carr, 369 U.S. 186, 204 * * *, as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' Flast v. Cohen, 392 U.S. 83, 101, * * *."
 
 
 40
 In the instant case, in our view the plaintiff alleged, in effect, that it indeed had such a "personal stake in the controversy." In this regard the trial court found that there would be economic detriment to the plaintiff's 200,000 members by the defendants' proposed operation in the form of "significant loss of work time, overtime, employment opportunities, future pension and insurance benefits and in morale." And such findings find support in the record. Accordingly, we conclude that under Sierra the plaintiff does have standing to bring this proceeding.
 
 
 41
 Additionally, Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), though concerned with the requisites of standing under the Administrative Procedure Act, also leads us to conclude that the plaintiff in the instant case has standing. In that case, a data processing company brought an action against, among others, a national bank which was about to make data processing services available to its customers pursuant to a ruling by the Comptroller of Currency that banks could properly provide such services. Such services were alleged to be in violation of a federal statute prohibiting a bank service corporation from engaging in any activity other than the performance of bank services for banks. In holding that the private data processing company, which claimed threatened economic injury, had standing to maintain the proceeding, and presumably was entitled to appropriate relief if it could prove its case, the Supreme Court applied the "zone of interests" test and held that the statute in question did "arguably bring a competitor within the zone of interests protected by it." And in the instant case we deem the plaintiff and the defendants in a very real sense to be would-be competitors. In sum, in our view the plaintiff has standing.
 
 
 42
 There remains only the related question as to whether the plaintiff is entitled to injunctive relief of the type and scope entered by the trial court. It is quite true that the private express statutes do not in so many words authorize the granting of injunctive relief to a private party. However, such may be implied if the plaintiff can demonstrate its interests fall within that class which the statutes in question were intended to protect. See, for example, Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), and J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). See also Jones v. Alfred Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L. Ed.2d 1189 (1968). And we believe Data Processing Service v. Camp, supra, is to the same general effect.
 
 
 43
 The private express statutes with which we are here concerned are designed to give effect to the constitutional mandate that Congress establish "Post Offices and post roads" and their plain intent is that the United States shall have a monopoly in the delivery of letters. The defendants by their proposed operation would break this monopoly and siphon off what was described as the "cream" of the postal operation, i. e., the delivery of certain letters-Christmas cards in various metropolitan areas without payment of United States postage-which would otherwise be delivered by the letter carriers represented by the plaintiff. The obvious effect of the defendants' proposed operation would be to reduce gross postal revenues. And reduced postal revenues would inevitably have adverse effect on the general employment statutes of the plaintiff's members. In this regard, as indicated, the trial court found that there would be economic detriment if the defendants were permitted to violate the private express statutes by delivering Christmas cards. It is on this basis that we conclude that the plaintiff is arguably within the zone of interests sought to be protected by the private express statutes and that accordingly injunctive relief was proper.
 
 
 44
 Although the matter was urged more strenuously in the trial court than here, it is further suggested that an injunction will not lie to enjoin the commission of a criminal offense. This argument overlooks the fact that certain of the statutes with which we are here concerned are purely civil in nature. 39 U.S.C. Secs. 601 and 604. In any event, the rule that equity has no jurisdiction to enjoin the commission of a crime, Gee v. Pritchard, 2 Swans 402, 413, 36 Eng. Rep. 670, 674 (1818), has never been an absolute. We have held in Frank v. United States, 384 F.2d 276 (10th Cir. 1967), that enjoining acts that are a criminal offense was permissible under In re Debs, 158 U.S. 564, 593, 15 S.Ct. 900, 909, 39 L.Ed. 1092 (1895). In the latter case appears the following pertinent comment:
 
 
 45
 "* * * [I]t is objected that it is outside of the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature; but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law. * * *"
 
 
 46
 We regard this particular argument to be of no moment in the instant proceeding.
 
 
 47
 Judgment affirmed.
 
 
 
 [1]
 This Regulation was formerly codified in 39 C.F.R. Sec. 152.2(a). On December 23, 1970, the group of Regulations to which this belongs was removed from C.F.R. but "retained in force as uncodified regulations." 35 Fed.Reg. 19399