## AMERICAN POSTAL WORKERS UNION, Plaintiff-Appellee,

v.

## REACT POSTAL SERVICES, INC., Mountain Bell Telephone Company and United States Postal Service, Defendants-Appellants.

Nos. 84–2334, 84–2372.

United States Court of Appeals, Tenth Circuit.

Aug. 19, 1985.

Anton G. Hajjar of O'Donnell, Schwartz and Anderson, Washington, D.C., for the plaintiff-appellee.

Walter P. Faber, Jr., (David J. Hodgson with him on brief) of Watkins & Faber, Salt Lake City Utah, for defendants-appellants React Postal Services, Inc., and Mountain Bell Telephone Co.

Harold J. Hughes, Deputy Gen. Counsel, Washington, D.C. (Charles D. Hawley, Asst. Gen. Counsel and Michael T. Tidwell, Atty., U.S. Postal Service, Washington, D.C., with him on the briefs) for defendant-appellant, U.S. Postal Service.

Before BARRETT, MOORE and TIMBERS *, Circuit Judges.

BARRETT, Circuit Judge.

React Postal Services, Inc. (React) and the United States Postal Service (USPS) appeal an injunction barring React from conducting business as a presort letter mailing firm. At all pertinent times, React has collected the mail of its customers and clients at its various collection boxes in the Salt Lake City metropolitan area, presorted that mail, and presented the mail at the nearest USPS post office with postage affixed at USPS discount rates. A specific description of React's operation follows:

### Background

**Phase I**

In April, 1982, React installed letter collection boxes in 114 7–Eleven stores in the

---

* The Honorable William H. Timbers, Senior Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

greater Salt Lake City metropolitan area. These boxes contained three slots. The first slot was for bill payments to Mountain Bell. Customers would affix a 10-cent React decal to these letters addressed to Mountain Bell. (Mountain Bell paid React 12 cents for each of these bill payments). The second slot was for in-state mail; the React decal for this category cost 18¾ cents (4 for 75 cents). The third slot was for out-of-state mail; the React decal for this category cost 20 cents. R. at 380. At all pertinent times, the regular USPS First-Class Mail rate for all three of these categories of mail was 20 cents [1]. Thus, the customer saved money by using React's services for Mountain Bell bill payments and in-state mail.

React carried its customers' letters from its letter collection boxes to a central place of business in Salt Lake City. At this central location, postage was affixed by postage meter to each letter, the amount of postage depending on whether the letter qualified for the Presort First-Class Mail [2], Carrier Route First-Class Mail [3], or regular First-Class Mail rate of postage. Also processed at the React facility were letters from React's regular business clients. On May 24, 1982, the USPS Law Department issued Advisory Opinion PES 82-8, which concluded that React's Phase I operation was not in violation of applicable statutes and regulations. R. at 207.

## Phase II

In May, 1983, React's letter collection boxes were relocated from the 7–Eleven stores to 26 Smith's Food King Stores. The boxes were changed to permit collection of bill payments addressed to Mountain Fuel, Utah Power & Light, and Mountain Bell. React decal prices remained the same. During this phase of the operation, customers' bill payments addressed to Mountain Bell and Mountain Fuel were aggregated by React into Express Mail pouches addressed to the respective utility companies. The pouches were sealed and weighed, and postage was affixed at the rate prescribed for Express Mail Custom-Designed Service [4]. Such rate was based on the weight of the pouch. R. at 382. These pouches were then picked up at the post office by an employee of the respective utility companies. Letters addressed to Utah Power & Light were also aggregated into Express Mail pouches. As with the other Express Mail pouches, proper postage was affixed and the pouches were taken to the post office, where a USPS employee would verify weight and postage. The React employee would then act as Utah Power & Light's agent and carry the pouch directly from the post office to Utah Power & Light's offices at 1407 West North Temple in Salt Lake City.

## Phase III

On July 8, 1983, the Governors of the Postal Service followed a recommendation

1. The regular First-Class Mail rate at the time was 20 cents for letters weighing less than 1 ounce, and 17 cents for each additional ounce or fraction thereof up to 12 ounces. Domestic Mail Manual Issue 13, § 310; see R. vol. IV.

2. Presorted First-Class Mail is mail presented in a manner that preserves the orientation, facing, and ZIP code sequence of the pieces. The presorted First-Class Mail rate applies to each piece of First-Class Mail (other than Zone-Rated Priority Mail) that is part of a group of 10 or more pieces sorted to the same 5-digit ZIP code, or part of a group of 50 or more pieces sorted to the same 3-digit ZIP code prefix, when these pieces are presented at one post office as part of a single mailing of not less than 500 pieces of First-Class Mail, each weighing 12 ounces or less. The Presort First-Class Mail discount is 3 cents off the regular rate. Domestic Mail Manual Issue 13, §§ 310, 323.1; R. at 377–78.

3. The Carrier Route First-Class Mail rate applies to each piece of First-Class Mail that is part of a group of 10 or more pieces properly sorted to the same carrier route, post office box section, or general delivery unit, when they are presented at one post office as part of a single mailing of not less than 500 pieces. The Carrier Route First-Class Mail discount is 4 cents off the regular rate. Domestic Mail Manual Issue 13, §§ 310, 323.2; R. at 378.

4. Express Mail Custom-Designed Service is provided pursuant to a service agreement between the USPS and the sender. Rates vary according to the distance of carriage and the weight of the piece. The rate in any zone for a piece less than 2 pounds is $9.35. Domestic Mail Manual Issue 13, §§ 210, 223 and Exh. 213.

from the Postal Rate Commission and amended the "aggregation of letters" rule appearing at § 381.3 of the Domestic Mail Manual[5]. The rule had previously prohibited the aggregation of multiple letters addressed to a common addressee into a larger packet (except, of course, when aggregation was pursuant to an Express Mail Custom-Designed Service Agreement). See R. at 205 (text of old § 381.3). The amended rule provides that two or more persons having letters addressed to a mutual addressee may aggregate these letters into a single package and pay First-Class postage on the entire package. Thus, postage need no longer be paid on each individual piece of First-Class Mail. The aggregation may be performed either by the senders themselves or by their agent. (Still prohibited, however, would be the practice of aggregating letters addressed to *different* addressees into a single package, where the package addressee might deliver the individual letters to their ultimate destinations). Domestic Mail Manual Issue 13 § 381.3 (text of amended rule); R. at 642.

React's response to this rule change was to discontinue its use of Express Mail Custom-Designed Service and begin using regular First-Class Mail for its aggregate packages weighing less than 12 ounces and Zone-Rated (Priority) Mail[6] for its packages weighing more than 12 ounces. React's costs for mailing its customers' utility bill payments were decreased still further when this practice was adopted.

## Litigation History

The American Postal Workers Union (APWU) brought this action against React, alleging that React's business operations constituted an unlawful intrusion into the USPS' historic monopoly of postal services. Specifically, APWU alleged that React was violating two of the Private Express Statutes[7]. The Private Express Statutes, codified at 18 U.S.C. §§ 1693–1699 and 1724 (1982) and 39 U.S.C. §§ 601–606 (1982), delineate the USPS' monopoly and protect it by prohibiting private competition within the boundaries of the monopoly. APWU's contention was that React's operation constituted an unlawful rival post office in that React was performing the collection and sorting tasks properly performed only

---

**5.** The APWU sought judicial review of the Governors' decision, but the D.C. Circuit Court of Appeals dismissed the petition for failure to file within the period prescribed by law. *American Postal Workers Union, AFL–CIO v. United States Postal Service*, No. 83–1883 (D.C.Cir. Nov. 15, 1983); R. at 644.

**6.** Zone-Rated Priority Mail is mail that weighs between 12 ounces and 70 pounds and is not eligible for another rate. These rates vary according to distance and weight. For example, a 2 pound package delivered to a local zone would cost $2.54. Domestic Mail Manual Issue 13, § 325, Exh. 310.

**7.** The two statutes upon which APWU relies are 18 U.S.C. § 1696 (1982) and 39 U.S.C. § 601 (1982), which provide in pertinent part:

§ 1696. **Private express for letters and packets**

(a) Whoever establishes any private express for the conveyance of letters or packets, or in any manner causes or provides for the conveyance of the same by regular trips or at stated periods over any post route which is or may be established by law, or from any city, town, or place to any other city, town, or place, between which the mail is regularly

carried, shall be fined not more than $500 or imprisoned not more than six months, or both.

This section shall not prohibit any person from receiving and delivering to the nearest post office, postal car, or other authorized depository for mail matter any mail matter properly stamped.

\*       \*       \*       \*       \*       \*

§ 601. **Letters carried out of the mail**

(a) A letter may be carried out of the mails when—

(1) it is enclosed in an envelope;

(2) the amount of postage which would have been charged on the letter if it had been sent by mail is paid by stamps, or postage meter stamps, on the envelope;

(3) the envelope is properly addressed;

(4) the envelope is so sealed that the letter cannot be taken from it without defacing the envelope;

(5) any stamps on the envelope are canceled in ink by the sender; and

(6) the date of the letter, of its transmission or receipt by the carrier is endorsed on the envelope in ink.

(b) The Postal Service may suspend the operation of any part of this section upon any mail route where the public interest requires the suspension.

by USPS employees (such employees being APWU members) and thereby accomplishing the delivery of mail at artificially low rates.

The USPS was not originally a party to this action, but on motion of React was found by the court to be a necessary party defendant. R. at 11. Discovery was conducted, and the parties stipulated to all pertinent facts. R. at 375–90. In response to cross-motions for summary judgment, the trial court on July 31, 1984, granted judgment in favor of the APWU and enjoined React from engaging in the collection, carriage and sortation of mail. R. at 269–770. The injunction was subsequently stayed pending appeal. R. at 797–98.

In its Memorandum Opinion, the trial court addressed itself to the following language of 18 U.S.C. § 1696(a) (1982):

> This section shall not prohibit any person from receiving and delivering to the nearest post office, postal car, or other authorized depository for mail matter any mail matter properly stamped.

The court found that the phrase "properly stamped" meant that individual letters must have "the proper postage affixed to them *at the time the messenger picked them up*" R. at 764 (emphasis in original). Since React did not affix postage until after the letters had left the possession of the senders, the court found a violation of Section 1696(a). The court also found that React did not come within the exception of 39 U.S.C. § 601(a)(2) (1982) because each letter, although affixed with postage at discount rates, was not affixed with the full amount of postage that would have been required had the sender/customer mailed the letter individually.

The trial court then examined the regulation at 39 C.F.R. § 310.3 (1984)[8], and found that "React's operation separates and consolidates letters according to addressee," and such separation and consolidation were explicitly outside the Section 310.3(e) "carriage prior or subsequent to mailing" exception.

In response to React's contention that the USPS' new aggregation rule specifically permitted React's Phase III operation, the court found that the plain meaning of the Private Express Statutes embodied a Congressional decision to grant the USPS a monopoly that could not be overturned by a mere administrative ratemaking action.

The appellants React and USPS take issue with each of these trial court findings. Their position is that React's operation is permitted by 18 U.S.C. § 1696(a) (1982) and accompanying interpretive regulations in that the operation qualifies as a "carriage prior or subsequent to mailing" exception to the general statutory prohibition of private express companies. 39 U.S.C. § 601 (1982) then, would be irrelevant because React need only to qualify under any one statutory exception in order to be within the law.

### Jurisdiction

Before we address the merits, we must resolve a preliminary jurisdictional question. The appellants contend that jurisdiction was lacking in the trial court be-

---

8. 39 C.F.R. § 310.3(e) (1984) provides:

§ 310.3 **Exceptions**

(e) *Carriage prior or subsequent to mailing.* (1) The private carriage of letters which enter the mail stream at some point between their origin and their destination is permissible. Except as provided in paragraph (e)(3) of this section, however, the carriage of letters from a place where they have been opened, read, separated, or otherwise utilized, does not fall within this exception even though such letters had previously been in the mail stream. Similarly, the carriage of letters to a place where they will be consolidated or otherwise utilized does not fall within this exception even though they will subsequently enter the mail stream.

(2) Examples of permitted activities are the pickup and carriage of letters which are delivered to post offices for mailing; the pickup and carriage of letters at post offices for delivery to addressees; and the bulk shipment of individually addressed letters ultimately carried by the Postal Service.

(3) The private carriage of letters from branches of an organization to a location for preparation for mailing does not constitute a consolidation. The private carriage of letters from an organization's point of mail delivery to its branches in the locality does not constitute a separation.

cause (1) the APWU has no standing to enforce the Private Express Statutes, and (2) there is no jurisdiction in equity to enjoin the violation of a criminal statute. These contentions are without merit. In *National Association of Letter Carriers, AFL–CIO v. Independent Postal System of America, Inc.,* 470 F.2d 265 (10th Cir. 1972), we held that a postal workers' union has the requisite "injury in fact" and is within the Private Express Statutes' "zone of interest." Therefore, such a union does have standing to seek an injunction to enforce the Private Express Statutes. That conclusion was based on the rationale that whenever a private entity is allowed to perform the tasks of collection, sortation, delivery, etc. in competition with the USPS, the employment opportunities of the postal workers are inevitably reduced. Simply put, outsiders would be doing the jobs that the postal workers' union members are allegedly entitled to. The reader is referred to the *National Association of Letter Carriers* opinion for a thorough discussion of the applicable law of standing in this regard, including an explanation as to why the traditional rule that equity will not enforce a criminal statute does not apply in these cases.

### The Merits

The parties have stipulated that React carries "letters" over "post routes." [9] React is therefore in violation of 18 U.S.C. § 1696(a) (1982) unless its operation qualifies as a statutory exception to the general prohibition of private carriage of "letters" over "post routes." The focus of our inquiry on the merits is thus the proper interpretation of the final sentence of 18 U.S.C. § 1696(a) (1982):

This section shall not prohibit any person from receiving and delivering to the nearest post office, post car, or other authorized depository for mail matter any mail matter properly stamped.

Specifically, our task is to interpret the meaning of the phrase "properly stamped," for if React is carrying "properly stamped" mail to the nearest post office, then there is no violation of the statute. The above-quoted sentence is the origin of the traditional "carriage prior or subsequent to mailing" exception to the Private Express Statutes' general prohibition of private competition. This exception, with other recognized exceptions, has been further defined and clarified by the interpretive regulations of the USPS. Although we are not bound by an agency's interpretation of its own statutes, deference to that interpretation is appropriate under certain circumstances. *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981); *Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977) (distinguishing between substantive and interpretive regulations). The Supreme Court stated in the seminal case of *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944):

We consider that the rulings, interpretations and opinions of the Administrator under this [Fair Labor Standards] Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

◼ The USPS regulation elaborating on the "carriage prior or subsequent to mailing" exception appears at 39 C.F.R. § 310.-3(e) (1984), the text of which appears *ante* at footnote 8. We will also be considering the USPS' rate regulations,[10] inasmuch as

---

9. The terms "letters" and "post routes" are defined at 39 C.F.R. § 310.1(a) and (c) (1984).

10. The pertinent USPS rate regulations are found in the Domestic Mail Manual Issue 13, which is found in the Record at Vol. IV. The Domestic Mail Manual is incorporated by refer-

the phrase "properly stamped" must certainly, at a minimum, mean that all letters must bear an amount of postage that corresponds to applicable rates.

As mentioned above, the trial court held that "properly stamped" means that the proper postage must be affixed to the individual letters at the time the messenger picks them up. With all respect, it is our view that such an interpretation is not required either by the statutory language or by any other authority. The basic rationale behind the "carriage prior or subsequent to mailing" exception is that the USPS' revenue base must be protected; thus, incidental carriage of mail to and from a post office is permitted provided that the USPS does not lose revenue as a result of the private carrier's practice[11]. *See* USPS Adv.Op. PES 77–13, March 11, 1977, fn. 3; R. at 619, 622.

This rationale does not require that letters have postage affixed at the time the private messenger picks them up for delivery to the nearest post office. If the USPS gets the full postage to which it is entitled on each of these letters, it is irrelevant for revenue purposes when that postage was affixed before mailing. Furthermore, a requirement as to the timing of the affixation of postage would be impractical, if not impossible, for the USPS to enforce. Finally, the trial court's interpretation is inconsistent with 39 C.F.R. § 310.3(e)(3) (1984), which expressly permits the "private carriage of letters from branches of an organization to a location for preparation for mailing." We hold that Section 1696(a) requires only that letters be properly stamped at the time they are presented at the post office for mailing.

We turn now to an examination of the *amount* of postage that is required for a letter to be deemed "properly stamped." The APWU strenuously contends that the proper amount of postage is the full amount to which the USPS would be entitled had the individual senders taken their letters to the post office themselves. The APWU puts it this way:

> If postage should be 20 cents if the letter were "properly stamped" before carriage to the post office, it should be 20 cents if the stamp were affixed at any point en route. Congress must have intended this, because presort and other discounts did not exist when the [Private Express Statutes] were enacted. Appellee's Brief at 21.

The APWU supports this proposition by pointing out that, during the time when postage rates for individual letters varied according to the distance the letter travelled, it was illegal to carry a letter to a post office nearer to the letter's ultimate destination unless the full postage that would be applicable at the letter's point of origin were affixed. The APWU's fundamental point here is that sortation of mail, like all of the traditional functions of the USPS, is within the domain of the postal workers, and the Private Express Statutes guarantee that the USPS' gross revenues may not be diminished because somebody other than the postal workers is doing this work.

This argument may be superficially appealing. However, it ignores the fact that the laws under which the USPS operates have changed since the enactment of the Private Express Statutes. The USPS has for some time offered discount postage rates for senders that presort their own mail, and the APWU has never challenged

---

ence into the Code of Federal Regulations at 39 C.F.R. §§ 111.1 and 111.5 (1984).

**11.** USPS counsel has commented on this rationale during rulemaking proceedings in which 39 C.F.R. § 310.3(e) was amended: "Since the intent of the exception is to permit private carriage that is only incidental to the transmission of letters through the mails, it should apply only to letters which have been carried, or will be carried, by the Postal Service for at least the

minimum rate of postage that would be required for delivery from senders to the addressees. The proposed regulation would not restrict the private carriage of letters prior or subsequent to mailing but would prevent the use of the exception as a means of avoiding the full postage to which the Postal Service is entitled under the Private Express Statutes." 45 Fed. Reg. 59872–73 (September 11, 1980).

the validity of the USPS' presorting regulations and presort discount rates *per se.* In order for senders to lawfully presort their own mail (thus taking away sortation work from the postal workers), they need only pay an annual fee of $40 for a presort mailing permit. Domestic Mail Manual Issue 13, Exh. 310. To this extent, then, a portion of the USPS monopoly has been turned over to those in the private sector who wish to compete with the USPS. Furthermore, USPS regulations do not require that presort permit holders presort only their own mail. The Domestic Mail Manual provides:

**341 Annual Presort Fee**

A Presort First-Class mailing fee must be paid once each calendar year at each office of mailing by any person or organization who enters mailings at a Presort First-Class Mail rate or at a carrier route First-Class rate. *Persons or organizations paying this fee may enter mail of their clients as well as their own mail.* Payment of one fee allows a mailer to enter mail materials at both rates. Domestic Mail Manual Issue 13, § 341 (emphasis added).

This language opens the door for the presort letter mailing firms that presort the mail of clients and customers as well as their own mail. As long as the USPS receives the full postage to which it is entitled (given the particular letter's weight, destination, presorted status, etc.) at the time the letter is presented at the nearest post office, carriage prior to mailing is allowed by the Private Express Statutes. Activity such as React's is thus within the "carriage prior to or subsequent to mailing" exception.

No different result is required with respect to React's Phase III aggregation operation, inasmuch as that aggregation was conducted in accordance with the terms of amended Section 381.3 of the Domestic Mail Manual. At no time did React conduct the kind of "consolidation" or "separation" of letters that has been found to be an abuse of the "carriage prior or subsequent to mailing" exception. *See* 39 C.F.R.

§ 310.3(e)(1) (1984); 45 Fed.Reg. 59872 (September 11, 1980).

Inasmuch as we hold that React's operation qualifies pursuant to the "carriage prior or subsequent to mailing" exception under 18 U.S.C. § 1696(a), the possible application of 39 U.S.C. § 601 need not be discussed. React has at all pertinent times been operating within the Private Express Statutes. Accordingly, the injunction barring React's operation should not have issued.

For the reasons described above, the court's judgment in favor of APWU is **REVERSED.** The court's injunction, stayed pending appeal, is hereby **VACATED.**