**ASSOCIATED THIRD CLASS MAIL USERS, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE et al., Defendants.**

**Civ. A. No. 76–1768.**

United States District Court, District of Columbia.

Nov. 29, 1977.

J. Edward Day, Barbara Bison Ford, Washington, D. C., for plaintiff.

Nicholas H. Diacou, Larry Moore, Roger P. Craig, Jack T. Dilorenzo, Washington, D. C., for defendants.

Mozart G. Ratner, Washington, D. C., for defendant-intervenor.

## MEMORANDUM OPINION

PARKER, District Judge:

The issue presented in this proceeding is whether advertisements directed in identical form to specific persons or residences are validly subject to the United States Postal Service monopoly over letter deliv-

ery. Plaintiff Associated Third Class Mail Users ("Mail Users") has brought suit against the United States Postal Service. Mail Users seeks a declaration that 39 C.F.R. § 310.1–.7 (1977), postal regulations enforcing the monopoly, are invalid or unconstitutional either in their entirety or insofar as they define the term "letter" to include such advertisements.[1] Plaintiff additionally seeks an injunction restraining the Postal Service from enforcing these regulations. The National Association of Letter Carriers, the exclusive bargaining representative for all nonsupervisory Postal Service employees in the city letter carrier craft, has been permitted to intervene as a party defendant.

This proceeding arises under the postal laws of the United States, 18 U.S.C. § 1696 and 39 U.S.C. §§ 601–606 ("Private Express Statutes"); jurisdiction rests on 39 U.S.C. § 409(a) and 28 U.S.C. § 1339.

There are no material facts in dispute and the parties have filed cross-motions for summary judgment. After consideration of the memoranda of points and authorities, the affidavits and the oral argument of counsel, the Court concludes that the defendants are entitled to judgment and that the complaint of Mail Users should be dismissed.

## I.

Mail Users is a District of Columbia trade association consisting of more than 600 organizations which distribute so-called "public advertisements" through the mail at third class rates. Plaintiff's pleading defines such an advertisement to be a "printed message to the public directed in identical form to selected persons or addresses."[2] To avoid increasing postal rates, Mail Users desires to develop a private system of carriage and delivery of "public advertisements."

The current Private Express Statutes and regulations determine the legality of private carriage systems. Title 18 U.S.C. § 1696 provides criminal penalties for whoever establishes or uses a private express. The companion civil statute, 39 U.S.C. §§ 601–606, approves private carriage of letters that display the proper amount of postage cancelled in ink and authorizes the Postal Service to search for and seize illegally transported letters. Although the Statutes do not define the term "letter," the Postal Service has defined that word to mean a "message directed to a specific person or address and recorded in or on a tangible object . . . ." and has specified that "[i]dentical messages directed to more than one specific person or address . . . constitute separate letters."[3]

Mail Users readily admits that "public advertisements" are letters under the regulatory scheme and are therefore subject to the postal monopoly. However, plaintiff contests the validity of this outcome, because its members' advertisements are allegedly directed to the public at large rather than being the private communications connoted by the term "letters." Addressing, according to Mail Users, is merely a convenience to direct advertisements to various consumer markets.

Despite plaintiff's representations, addressing is the most important characteristic of "public advertisements." Over 67% of third class mail is addressed to a specific

---

1. 39 C.F.R. § 310.1(a) provides in relevant part:

"Letter" is a message directed to a specific person or address and recorded in or on a tangible object, subject to the following:

(3) A message is directed to a "specific person or address" when, for example, it is directed to a named or identifiable individual, organization, or official, or when it is directed to a specific place.

(6) Identical messages directed to more than one specific person or address . . . constitute separate letters.

Under subsection (a)(7), telegrams, checks, newspapers, periodicals and books or catalogs of 24 or more bound pages are not considered to be "letters."

2. Complaint, ¶ 6.

3. See note 1 supra.

member of a household.[4] While Mail Users members are free to develop a private delivery service for unaddressed advertisements, they have chosen to bring this action instead. Therefore, the focal question here is whether the distinction between addressed and unaddressed circulars under the Private Express Statutes and regulations is valid as a matter of law.

In support of its motion for summary judgment, Mail Users refers the Court to legislative, judicial and administrative interpretations of the term "letter" in an attempt to prove that the regulatory distinction is invalid. In the alternative, plaintiff argues that the regulations violate its members' constitutional rights to due process, free speech and equal protection of the laws.

## II.

■ As a preliminary matter, the Court notes that, contrary to the plaintiff's assertion, the Postal Service did not act ultra vires in promulgating the private express regulations under 18 U.S.C. § 1696. The Service is specifically authorized under 39 U.S.C. § 401(2) to develop regulations to further the private express objectives of Title 39. While section 1696 is not a part of Title 39, that section is a substantive Private Express Statute, separated from the others only when United States criminal provisions were codified into Title 18 in 1909. Therefore, the rulemaking authority of 39 U.S.C. § 401(2) also extends to § 1696.[5]

■ Plaintiff Mail Users first argues that the Postal Service ignored legislative history in defining the term "letter" to include "public advertisements." This position has little, if any, merit. While the status of such messages in the postal monopoly legislation of the eighteenth and early nineteenth centuries is uncertain, Congress specifically included advertising circulars in 1845 by extending the private express prohibition to letters, packets or "other matter properly transmittable in the United States mail, except newspapers, pamphlets, magazines and periodicals." Act of March 3, 1845, § 9, 5 Stat. 735. In 1872, when Congress redrafted the statute and returned to earlier language prohibiting private express of only letters and packets, Act of June 8, 1872, § 228, 17 Stat. 311, advertisements were not thereby removed from the monopoly because the change was part of a general recodification of the law in 1872 to weed out redundancy. Given that substantive changes in the postal provisions were well-documented, the unheralded change in phrasing in the Private Express Statutes could only have been a simplification.[6] Since the statutes have remained relatively unchanged since 1872, the legislative history shows that communications such as "public advertisements" are still letters for private express purposes.

In a related vein, Mail Users argues that the term "letter" in the private carriage provisions must be read *in pari materia* with that term as used by Congress to indicate first class mail closed to postal inspection. This argument is inappropriate here since Congress was not dealing with the same subject or purposes in the classification of letters for rate and inspection purposes and the prohibition of private express for letters. Indeed, in refusing juris-

---

4. Affidavit of John R. Wargo, ¶ 12c, Motion of the Postal Service for Summary Judgment.

5. This conclusion is supported by § 7 of the Postal Reorganization Act of 1970, P.L. 91–375, 84 Stat. 783, in which Congress ordered the Board of Governors of the Postal Service to conduct a study of the "restrictions on the private carriage of letters. and packets contained in Chapter 6 of Title 39 . . . and sections 1694–1696 of Title 18, United States Code, and the *regulations established and administered under these laws.*" (emphasis added)

6. By this point in time, "letter" presumably had an accepted usage for postal monopoly purposes, since the 1872 Act did not even include the newspaper and periodicals exemption. Ironically, this fact shows that plaintiff's argument here proves too much, since the logic erroneously leads to the conclusion that Congress meant the monopoly in 1872 to cover those traditionally excluded items as well as advertisements.

diction over the Private Express Statutes, the Postal Rate Commission found that Congress has recognized and approved the "dual construction" of the term "letter." [7]

Plaintiff's second major argument is that judicial interpretation of the term "letter" would exclude "public advertisements." The case law, however, supports the opposite proposition. In *United States v. Bromley*, 53 U.S. (12 How.) 87, 13 L.Ed. 905 (1851), the Supreme Court held that an unsealed order for tobacco was a letter subject to the postal monopoly. In light of the purpose of the monopoly to protect postal revenue, the Court rejected the argument that merchandise orders were not letters, noting that "it may be doubted whether any other subject can be named on which more letters are written and forwarded in the mail." *Id.* at 97. Mail Users attempts to distinguish *Bromley* on the grounds that a merchandise order is more individualized than a "public advertisement." While true, this distinction does not override the *Bromley* economic reasoning, for advertisements today contribute one and a half billion dollars of revenue to the Postal Service per year.

In *National Association of Letter Carriers v. Independent Postal System of America, Inc.*, 336 F.Supp. 804 (W.D.Okl.1971), *aff'd*, 470 F.2d 265 (10th Cir. 1972) (hereinafter cited as *IPSA*), the district court enjoined an independent postal system from delivering addressed and privately stamped Christmas cards to customers of participating businesses, finding that the cards were letters subject to private express prohibitions.[8] Plaintiff's arguments against the precedential value of the *IPSA* case are strained at best. Given that the Independent Postal System restricted its delivery to commercial cards, which are not markedly more private than average advertisements, the two cases are not distinguishable on the basis of the nature of the mail at issue. Plaintiff's assertion that the *IPSA* decision turned on the physical similarity of the proposed independent system to the United States Postal Service lacks merit. While the court did describe similarities such as utilization of uniformed postmen and stamps, the actual decision in no way rests on the physical attributes of competition. Even if *IPSA* did turn on this issue, Mail Users here offers no details of its proposed private delivery service in order to distinguish it from the aborted Independent Postal System of America.

Third, Mail Users argues that the administrative interpretation of the term "letter" has been so inconsistent as to invalidate the regulatory definition. This position cannot withstand legal scrutiny. While the Postal Board of Governors did report to Congress that administration of the Private Express Statutes could be improved,[9] the Court will not suspend the rulemaking authority of the Postal Service on the basis of that announcement alone. Nor will the Court invalidate 39 C.F.R. § 310.1(a) on the basis of an allegedly "illogical flip-flop" by the Service in promulgating the rule. The agency originally proposed to define the term "letter" to include all items but telegrams, and to suspend operation of the Private Express Statutes for newspapers, periodicals, catalogs and checks. In response to comments, the Service rejected the suspension approach to exclude items by definition. This process does not mark inconsistency within the agency, but rather compliance with rulemaking procedure under the Administrative Procedure Act. At any rate, the substantive coverage of the postal monopoly over "public advertisements" was not changed as the rule was promulgated.

■ As an alternative to the legislative, judicial and administrative history argu-

---

7. United States Postal Rate Commission, Statement of General Policy Determining Lack of Jurisdiction and Order Terminating Proceeding 16–19 (Aug. 6, 1976).

8. Though 39 C.F.R. § 310.1(a) had not yet been promulgated, the court looked to regulations which defined "letter" in an almost identical

way. 39 C.F.R. § 152.2 as retained in an uncodified regulation by 35 Fed.Reg. 19399 (1970).

9. House Comm. on Post Office and Civil Service, 93rd Cong., 1st Sess., Statutes Restricting Private Carriage of Mail and Their Administration 13 (Comm. Print 1973).

ments, Mail Users presents several constitutional reasons against inclusion of "public advertisements" in the postal monopoly. All are lacking in merit. Plaintiff claims that the regulations are so arbitrary as to violate its members' Fifth Amendment right to due process, because the "minor inconvenience" of addressing cannot rationally affect whether an advertisement is a letter. Plaintiff itself defeats this reasoning by demonstrating that addressing is crucial to its members' advertising goals.

▐ Mail Users also claims that the prohibition of private express for "public advertisements" imposes an impermissible burden on its members' free speech. The restraint plaintiff complains of, however, is no different than that placed on any person subject to the Private Express Statutes, which have long been found constitutional. *Ex Parte Jackson*, 96 U.S. 877, 24 L.Ed. 877 (1878). In *United States v. Black*, 418 F.Supp. 378 (D.Kan.1976), the defendants, who had delivered statements of medical services received to a doctor's patients, contended that if Congress could restrict delivery of letters to the Postal Service, then future postal rate increases could restrict the ability of poor people and small businesses to communicate by mail. The district court dismissed these contentions as being "so speculative and filled with conjecture as to deserve little or no comment." *Id.* at 382. The First Amendment claims of Mail Users in the instant case are no less speculative.

▐ Finally, Mail Users claims that its members have been denied equal protection of the laws because the exclusion of newspaper supplements and addressed catalogs over 24 pages long from a monopoly that includes "public advertisements" bears no relation to the postal revenue goals.[10] However, these members are free to use any type of advertisement to reach potential customers, including newspaper supplements and catalogs. At any rate, these classifications are based on reasonable distinctions. Congress has traditionally ex-

empted newspapers and periodicals from the monopoly to avoid restrictions on the press. At some point catalogs become too large to fit into the common usage of the term "letter"; 24 pages, a figure suggested to the Postal Service by Mail Users, is not unreasonable.

### III.

From *Bromley* to *IPSA*, the Congress, the courts and the Postal Service have all understood the Private Express Statutes to prohibit the private carriage of messages such as "public advertisements." There is no constitutional infirmity in such an interpretation. Therefore, there being no genuine issue of material fact and the defendants being entitled to judgment as a matter of law, the Court enters summary judgment in favor of defendant United States Postal Service and defendant-intervenor National Association of Letter Carriers and against Associated Third Class Mail Users. An appropriate order will be entered.