ASSOCIATED THIRD CLASS MAIL USERS, Appellant,

v.

UNITED STATES POSTAL SERVICE et al.

No. 78–1065.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1978.

Decided March 9, 1979.

Rehearing Denied April 3, 1979.

J. Edward Day, Washington, D.C., for appellant.

Roger P. Craig, Deputy Gen. Counsel, U.S. Postal Service, Washington, D.C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Louis A. Cox, Gen. Counsel, U.S. Postal Service, Earl J. Silbert, U.S. Atty., and Ronald R. Glancz, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellee United States Postal Service.

Peter J. Carre, Washington, D.C., with whom Mozart G. Ratner, Washington, D.C., was on the brief, for intervenor-appellee National Association of Letter Carriers.

Charles R. Work, Washington, D.C., with whom Lewis A. Rivlin, Washington, D.C., was on the brief, for amicus curiae National Mass Retailing Institute urging reversal.

Before WRIGHT, Chief Judge, WILKEY, Circuit Judge, and FLANNERY,* District Judge.

J. SKELLY WRIGHT, Chief Judge:

■ This appeal is from the District Court's grant of summary judgment in favor of the United States Postal Service in a suit challenging the Service's construction of the century-old legislation which establishes and defines the current Government monopoly over the delivery of mail. Appellant, the Associated Third Class Mail Users (ATCMU),[1] asserts that the prohibition against private conveyance or delivery of "letters and packets" in what are known as the Private Express Statutes[2] may not lawfully be applied to delivery of advertising circulars addressed to particular persons or locations.[3] The Postal Service takes a contrary position.[4] It has determined by regulation that the term "letter" in the statutory proscription encompasses any "message *directed to a specific person or address and*

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. The National Mass Retailing Institute (NMRI) appeared as *amicus curiae* in support of appellant.

2. Like the parties, we use the phrase "Private Express Statutes" to refer to the group of statutes which create the postal monopoly and set forth the conditions under which private persons may carry letters. The central statute at issue in this case is 18 U.S.C. § 1696 (1976), which provides in relevant part:

   § 1696. **Private express for letters and packets**

   (a) Whoever establishes any private express for the conveyance of *letters or packets*, or in any manner causes or provides for the conveyance of the same by regular trips or at stated periods over any post route which is or may be established by law, or from any city, town, or place to any other city, town, or place, between which the mail is regularly carried, shall be fined not more

than $500 or imprisoned not more than six months, or both.

(Emphasis added.) Other provisions relating to the postal monopoly are set forth in 18 U.S.C. §§ 1694–1699 (1976) and 39 U.S.C. §§ 601–606 (1976).

   The parties are apparently in agreement that the term "packet" means simply a packet of letters and adds nothing of relevance here to the scope of the monopoly. "Letter" thus remains the crucial term.

3. ATCMU uses the phrase "public advertisements" to describe the materials in suit. The Postal Service and NMRI refer to them as "addressed advertising circulars" or "addressed advertisements." The difference is apparently only semantic. All seem to have in mind the same sorts of materials: advertising flyers or brochures, sealed or unsealed, that are addressed to particular persons or to the occupants of particular premises. Appellant seeks the option of using private delivery services for these materials.

4. The National Association of Letter Carriers appeared as an intervenor-appellee.

recorded in or on a tangible object"[5]—a definition which clearly includes addressed advertising materials. This litigation turns on the validity of that definition.

The District Court concluded that since the mid-19th century "the Congress, the courts and the Postal Service have all understood the Private Express Statutes to prohibit the private carriage of messages such as [those at suit]." *Associated Third Class Mail Users v. United States Postal Service*, 440 F.Supp. 1211, 1216 (D.D.C. 1977). Finding no constitutional infirmity in that interpretation, Judge Parker went on to award summary judgment in favor of the Postal Service and dismiss the complaint. We affirm, relying heavily upon the District Court's thoughtful opinion.

Our task, and that which faced the District Court before us, is to determine whether the Postal Service's construction of the term "letter" is consistent with the text and history of the Private Express Statutes.

For a number of reasons, it is a less than satisfying task. First, our usual tools for statutory construction turn out not to be terribly helpful. Nothing in the phrase "letters and packets" answers the question before us, and the intent of the Congress which enacted that formulation in the course of the 1872 codification of the postal laws is shrouded in obscurity.[6] Moreover, even were the legislative intent less opaque, it might be robbed of currency by the not insubstantial developments of the intervening century. Second, few courts have considered the scope of the postal monopoly or the meaning of "letter."[7] Third, the Postal Service's interpretations and comments regarding the content of the term have often seemed ambiguous and inconsistent.[8] And fourth, the only policy concern clearly implicated in the quest for the proper scope of the monopoly—the need to shield postal operations from competition so the Postal Service can adopt nonmarket solutions in its effort to further various national goals[9]—is

---

**5.** (Emphasis added.) This definition is contained in the regulations concerning enforcement of the Private Express Statutes. *See* 39 C.F.R. § 310.1(a) (1977). That section goes on to make clear that "[i]dentical messages directed to more than one specific person or address * * * constitute separate letters." 39 C.F.R. § 310.1(a)(6).

Appellant asserts that promulgation of these regulations, which have the effect of defining the federal crime of transporting letters outside the mails, was beyond the authority of the Postal Service. We disagree. As the District Court observed, *Associated Third Class Mail Users v. United States Postal Service*, 440 F.Supp. 1211, 1214 (D.D.C.1977), the Service is authorized under 39 U.S.C. § 401(2) (1976) to promulgate regulations to further the objectives of Title 39, which includes provisions concerning the postal monopoly. While 18 U.S.C. § 1696—the private express provision at issue here—is not a part of Title 39, its purpose is intimately connected to that title, and it was only separated from the other private express sections in 1909 when the United States criminal laws were codified into Title 18. Accordingly, a fair reading of the rulemaking authority of 39 U.S.C. § 401(2) is that it extends to § 1696.

**6.** *See* Part I *infra*.

**7.** The decision most nearly on point is *Nat'l Ass'n of Letter Carriers v. Independent Postal System of America*, 336 F.Supp. 804 (W.D.Okl. 1971), *aff'd*, 470 F.2d 265 (10th Cir. 1972) (here-

inafter cited as *IPSA*). There it was held that unsealed printed Christmas cards sent by businesses to particular persons but bearing no personal message were letters within the meaning of the Private Express Statutes and hence subject to the postal monopoly. The similarities between the materials in suit in *IPSA* and the advertising materials at issue here are obvious.

In *United States v. Bromley*, 53 U.S. (12 How.) 88, 13 L.Ed. 905 (1851), the Supreme Court held that an unsealed merchandise order sent to a tobacconist was subject to the postal monopoly and observed that the private express provision was a "revenue law" within the meaning of a statute authorizing Supreme Court review of dispositions of civil actions "brought by the United States for the enforcement of the revenue laws of the United States * * *." 53 U.S. (12 How.) at 96.

Two circuits have recently sustained the general constitutionality of the postal monopoly in decisions involving conceded violations of the statute. *See United States Postal Service v. Brennan*, 574 F.2d 712 (2d Cir. 1978); *United States v. Black*, 569 F.2d 1111 (10th Cir.), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1525, 55 L.Ed.2d 541 (1978). Neither purported to construe the term "letter."

**8.** *See* Part II *infra*.

**9.** For example, the cross-subsidization inherent in establishment of uniform rates regardless of distance for each class of sealed mail pursuant

so open-ended and indeterminate that it provides scant guidance. These difficulties do not, of course, obviate the need for decision. But they necessarily color our inquiry and belie any notion that a single definition of "letter" flows ineluctably from the materials at hand.[10]

ATCMU and the National Mass Retailing Institute (which appeared as *amicus curiae* on behalf of appellant) assert that the Postal Service's definition of "letter" must fall because it (1) runs counter to the legislative history, (2) contradicts the weight of administrative authority, (3) is contrary to common sense, and (4) would if sustained lead to constitutional difficulties. We deal with each contention in turn.

## I

The statute creating the postal monopoly was first couched in its modern form—as a prohibition against establishment of "any private express for the conveyance of letters or packets"—in Section 228 of the Postal Act of 1872. Act of June 8, 1872, ch. 335,

§ 228, 17 Stat. 311. The previous statute had referred to conveyance of "any letters, packets, or packages of letters, or other matter properly transmittable in the United States mail, except newspapers, pamphlets, magazines and periodicals * * *." Act of March 3, 1845, ch. 43, § 9, 5 Stat. 735. ATCMU argues that the deletion of the "other matter" language reflected a deliberate congressional choice to narrow the postal monopoly, and that by so narrowing it the Congress eliminated any suggestion that it might include addressed advertising materials. As Judge Parker pointed out, however, the legislative history indicates that the 1872 Act was intended to reword and clarify the nation's postal laws *without substantive alteration.* 440 F.Supp. at 1214.[11] ATCMU has been unable to demonstrate that this general intent did not apply with full force to the monopoly provision. And absent some indication that Congress focused on the issue, we are reluctant to find in what purported to be a recodification a deliberate contraction of the postal monopoly.[12] Accordingly, we are of the

---

to 39 U.S.C. § 3623(d) (1976) is inconsistent with a fully competitive market, as is the decision to locate post offices in some out-of-the-way places.

**10.** We agree completely with the dissent that "the desired scope of the Postal Service's monopoly * * * is entirely a question of public policy," dissent, 195 U.S.App.D.C. at ——, 600 F.2d at 831, and share the view that Congress is the appropriate body to set the nation's policy in this regard. Indeed, we are hopeful that our recital of the ambiguities and uncertainties will spur Congress to give the matter some attention. We do not agree, however, that the desirability of a fresh look by Congress, standing alone, would justify a decision overturning the Postal Service's regulations and, by thus leaving matters in limbo, forcing Congress' hand.

**11.** *See* Report of the Commissioners to Revise the Statutes of the United States, H.R. Misc. Doc. No. 31, 40th Cong., 3d Sess. 2 (1869).

**12.** NMRI argues that the prior statutory language is irrelevant under the principles set forth in *United States v. Bowen,* 100 U.S. (10 Otto) 508, 25 L.Ed. 631 (1879), which held that the revised statutes became the law of the land when they took effect on the first day of December 1873 and that resort to prior statutes was improper when the meaning of the lan-

guage used in the revision was plain. 100 U.S. (10 Otto) at 513. This argument depends, of course, on the contention that the 1872 Act is unambiguous—a contention we find lacking in merit. NMRI relies in part on the sections of that Act concerning the classification of the mail into first, second, and third classes. Those sections provide:

> Sec. 130. That mailable matter shall be divided into three classes: first, letters; second, regular printed matter; third, miscellaneous matter.
>
> Sec. 131. That mailable matter of the first class shall embrace all correspondence, wholly or partly in writing, except book-manuscripts and corrected proof-sheets passing between authors and publishers.

Act of June 6, 1872, ch. 335, 17 Stat. 300. We do not think these sections convert an otherwise unclear statutory proscription into a clear one. Nothing in either the private express prohibition or the classification provisions suggests that the latter were intended to supply a definition of general applicability or to freeze the content of the postal monopoly. Indeed, §§ 130 and 131 do not purport to define *letter* at all. They merely use the term as an introductory label for a category which they go on to define. The result is not to shed a great deal of light on either the introductory label or the category. We are unwilling to conclude on the

opinion that the legislative text and history—while not dispositive of either party's contentions—tends to favor the Postal Service.[13]

## II

While the legislative history of the Private Express Statutes is quietly obscure, the administrative history is noisily so. Each side is able to point to pronouncements by Postal Solicitors and statements in Service publications which support its view. And each side is able to characterize the pronouncements and statements relied upon by the other as poorly reasoned, ambiguous, or casual.[14] In our judgment, the most that can be said about the administrative history is that it is something of a muddle: no single definition emerges as the obvious choice of past administrators, but neither does there appear any clear ground for setting aside the determination of present ones. The following rough and far from exhaustive sketch illustrates our point.

After the 1872 legislation was adopted there were indications that the Postal Service conceived of the monopoly in somewhat limited terms. In the course of an 1873 opinion which concluded that a package of first class letters was subject to the monopoly whether sent by a private person or a government agency, the Solicitor stated that the Private Express Statutes were intended to prevent "the transmission of mailable matter of the first class (all correspondence wholly or partly in writing) by express or other unlawful means." [15] And notes appended to late 19th century editions of the Postal Laws and Regulations stated that "Congress has not yet, by statute, extended the monopoly of transportation to second, third, or fourth class matter, although admitted to the mails." [16] But these indications are not unambiguous. The language in the Solicitor's opinion was neither directly related to the question presented nor by its terms exclusive—it did not say that the monopoly covered *only* what was then included under the rubric of mailable matter of the first class. And the import of the notations in the regulations may be undermined by the fact that the regulations themselves seem at times to have included some third class mailable matter within the term "letter" and to have used the terms

basis of these sections that the meaning of the private express provision is so unambiguous as to render resort to the prior statute invalid under *Bowen*.

13. We do not fully share the District Court's confidence that a broad view of the monopoly is the only one which may fairly be gleaned from the 1872 Act. The District Court was apparently persuaded in part by the argument that to attach substantive import to the deletion in that Act of the "other matter properly transmittable * * * except newspapers, pamphlets, magazines and periodicals" language would as a logical matter lead to the conclusion that Congress meant both to strike "other matter properly transmittable" from the scope of the monopoly and to eliminate the exception for newspapers and the like—thus rendering them subject to the monopoly. *See* 440 F.Supp. at 1214 n.6. We do not think the latter conclusion necessarily follows. Rather, if "newspapers, pamphlets, magazines and periodicals" were within the "other matter properly transmittable" category but not within the term "letter," then the deletion of the "other matter" category would render an exception for newspapers and the like unnecessary. Thus appellant's construction does not as a

matter of logic lead to the implausible conclusion that newspapers are subject to the monopoly.

14. *See, e. g.*, NMRI's brief at 26–28 (criticizing three 1916 Solicitor's opinions as "poorly reasoned"); appellee's supplemental brief answering NMRI's brief at 16 (asserting that certain testimony of Postmaster General was a "casual explanation").

15. 1 Opinions of the Solicitor of the Post Office Department (Ops.Sol.POD) 36, 38 (1873). Many of the relevant Solicitors' opinions, as well as excerpts from Postal Laws and Regulations, are reproduced in Appendix A of NMRI's brief.

16. Postal Laws and Regulations, note following § 705 (1887 ed.). The same language is contained in the note following § 674 of the 1893 edition. The 1879 edition contained a note stating that "[t]he term packet, as used in this and the following sections of the law, is restricted to mailable matter of the first class." Postal Laws and Regulations, note following § 555 (1879 ed.).

"mail-matter" and "letter" interchangeably.[17]

Following these early and concededly somewhat restrictive pronouncements came a number of administrative interpretations that appear difficult to reconcile. On the one hand, three opinions written by the Solicitor in 1916 concluded that the monopoly did extend to addressed circulars of various sorts,[18] a 1933 opinion observed that classification of mail matter into first, second, third, and fourth classes "in no way affects its status under the * * * private express statutes,"[19] and the 1934 edition of a Postal Service pamphlet explaining the monopoly stated that "under the private express statutes the term 'letters' has a broader significance and may embrace circulars."[20] On the other hand, a 1935 opinion concluded that "circulars advertising the goods of a concern for sale" were not letters for purposes of the Private Express Statutes,[21] another in the same year stated that the monopoly did not extend to "[o]rdinary advertising matter, such as handbills or circulars,"[22] and language added to the 1937 edition of the pamphlet referred to previously stated that "advertising handbills or circulars" were not within the letter or spirit of the monopoly.[23]

Some of the apparent inconsistencies noted above seem to have been resolved in 1940 when the Postal Service stated in a new edition of its pamphlet explaining the Private Express Statutes that "unaddressed advertising handbills or circulars" were *not* letters, thus setting forth at least by implication the current rule.[24] Nonetheless, appellant and *amicus curiae* argue that the inconsistencies prior to 1940 strip that rule of any foundation and render the Postal Service undeserving of deference in the definition process. The Service counters that the inconsistencies are more imagined than real. It reads those statements which suggest that advertising materials or circulars are not within the ambit of the term "letter" to refer only to *unaddressed* matter and argues that throughout the relevant period the rule was simply that addressed circulars were within the monopoly while unaddressed ones were without it. While this was apparently the rule written into the 1940 pamphlet,[25] neither the language of the earlier statements nor the subsequent editorial change renders the Service's reading of pronouncements made in the preceding decades anything more than a plausible conjecture. For present purposes, however, we do not find this conjectural quality to be fatal. Even if the Service's reading is not completely accurate, we do

---

17. All three editions of Postal Laws and Regulations cited in the preceding note listed "circulars" as third class matter but defined them as "printed letter[s]." *See, e.g.,* Postal Laws and Regulations §§ 359, 360 (1887 ed.). The 1879 edition's private express provision first forbids private conveyance of letters and packets and then states, "Nothing herein contained shall be construed as prohibiting any person from receiving and delivering to the nearest post-office or postal car *mail-matter* properly stamped." Postal Laws and Regulations § 555 (1879 ed.) (emphasis added). The 1873 edition of Postal Laws and Regulations also uses the term "mailable matter" in the private express context, *see* § 339, and suggests that circulars may be letters, *see* § 421(11).

18. 6 Ops.Sol.POD 372, 397, 453 (1916).

19. 8 Ops.Sol.POD 272, 273 (1933). ATCMU seeks to equate the meaning of "letter" for private express purposes with its meaning when used by Congress to delineate first class matter closed to inspection. As the District Court observed, however, "Congress was not

dealing with the same subject or purposes in the classification of letters for rate and inspection purposes and the prohibition of private express for letters." 440 F.Supp. at 1214. Therefore, *in pari materia* construction is inappropriate.

20. United States Post Office Department, The Private Express Statutes 4 (1934).

21. 8 Ops.Sol.POD 425 (1935).

22. 8 Ops.Sol.POD 469, 470 (1935).

23. United States Post Office Department, The Private Express Statutes 13–14 (1937).

24. United States Post Office Department, The Private Express Statutes 14 (3d ed. 1940). NMRI notes quite correctly that the Service did not via this pamphlet explicitly state that addressed circulars were within the monopoly.

25. *Id.*

not believe that whatever ambiguity or inconsistency existed is grounds to set aside the rule that is argued for today.

### III

We turn now to the ATCMU contention that the Postal Service definition of "letter" as "a message directed to a specific person or address and recorded in or on a tangible object" is arbitrary and contrary to common sense. As we understand it, the primary argument is simply that the inclusion of addressed advertising circulars is so counter-intuitive as to contradict the maxim that one should give effect to the plain and common meaning of the words Congress chose. We find this contention unpersuasive. We have no doubt that the specificity of the addressee is one indicia of the common understanding of "letterness." The dictionary definition which ATCMU would have us adopt [26] is not to the contrary. Webster states that a letter is "a written or printed message intended for the perusal only of the person or organization to whom it is addressed." [27] In our judgment, the materials at suit fit within this formula. Advertising circulars are *intended* for the perusal of the addressees. While ATCMU is doubtless correct that the senders would not object if others saw the circulars, the key fact is that the sender's goal is to reach the particular persons who have been identified as most likely to be interested in the advertised products. It is for this that the sender pays. His attitude toward the possibility that others might happen across his circulars is beside the point.

More broadly, we note that any definition is likely to appear arbitrary from some perspective for the simple reason that definitions draw lines—they exclude some matters and include others despite similarities between the two classes. We simply conclude today that the Postal Service has set-

tled upon a reasonable criterion—the presence or absence of an address—and that its definition suffers from no more than the level of arbitrariness which is inevitable.

### IV

Appellant's final contention is that the Postal Service's definition runs afoul of the First Amendment and the due process and equal protection clauses of the Constitution. We find these assertions without merit for substantially the reasons relied upon by Judge Parker [28] and see no reason to go beyond his careful analysis.

In sum, we find that the arguments raised by appellant and *amicus curiae* do not warrant invalidation of the definition of "letter" propounded by the Postal Service. For the foregoing reasons, the District Court's judgment is

*Affirmed.*

WILKEY, Circuit Judge, dissenting:

I am in agreement with Judge Wright's recital of the conflicting and shifting ambiguities which have beset both the statutory definition and the Postal Service's interpretation of the word "letter" for the purpose of defining the Postal Service's monopoly. I am in thorough agreement with the statements that "the Postal Service's interpretations and comments regarding the content of the term have often seemed ambiguous and inconsistent," (pp. ——–—— of 195 U.S.App.D.C., p. 826 of 600 F.2d) and "the most that can be said about the administrative history is that it is something of a muddle." (P. —— of 195 U.S. App.D.C., p. 828 of 600 F.2d.)

I dissent from the court's affirmance of the Postal Service's *current* interpretation of the word "letter" because, in my reading of the lengthy details back of the majority

---

26. Appellant's brief at 17–18.

27. Webster's Third New International Dictionary 1298 (1961).

28. Those reasons are set forth at 440 F.Supp. 1215–1216. In our judgment, this portion of the District Court's opinion deals adequately

with our dissenting colleague's concern that the treatment afforded to advertising materials enclosed in newspapers is arbitrary and somehow undermines the entire Postal Service policy. Dissent, 195 U.S.App.D.C. at ——, 600 F.2d at 831.

opinion's terse summary of 150 years of statute and statutory interpretation, there emerges only one consistent theme from the Postal Service—it has always latched onto whatever interpretation of the word "letter" which would give it the most extensive monopoly power which Congress at that time seemed disposed to allow.

Not only do I find this total lack of any intellectual consistency offensive, especially when coming from a supposed-to-be responsible government agency, but there is a very practical reason why I think this court should refuse to approve the Postal Service's current interpretation. If we decline to include the advertising flyers which the Postal Service is intent upon embracing within the word "letter" so as to give its monopoly the most expansive scope, we may then force the Postal Service to go to Congress to define accurately the desired postal monopoly scope. That definition, the desired scope of the Postal Service's monopoly, is entirely a question of public policy, properly to be determined solely by Congress, and this court should not countenance the Postal Service's power and revenue grabbing simply because the statute, the statutory history, and the agency's own administrative interpretations are conflicting and obscure.

On the most important substantive point I do differ with my two colleagues. At the outset the majority opinion points out that the Postal Service "has determined by regulation that the term 'letter' in the statutory proscription encompasses any 'message *directed to a specific person or address* and recorded in or on a tangible object'—a definition which clearly includes addressed advertising materials. This litigation turns on the validity of that definition." (Pp. —— —— of 195 U.S.App.D.C., pp. 825–826 of 600 F.2d) And, my colleagues conclude "that the Postal Service has settled upon a reasonable criterion—the presence or absence of an address—and that its definition suffers from no more than the level of arbitrariness which is inevitable." (P. —— of 195 U.S.App.D.C., p. 830 of 600 F.2d)

The appellants have strenuously argued that the very advertising circulars or flyers which are the subject matter of the dispute are frequently included as flyers inserted in newspapers which are delivered to specific named addressees at specific residential or business addresses. These flyers or circulars not only have the same text, they are physically the same product of ink and paper, the only difference being that the address in one instance is imprinted on the outside of the newspaper and in the other instance on the envelope containing only the circular or the circular itself. There are numerous examples of this in the record, and we were shown samples at oral argument.

I can see no legal difference in these three instances—name and address printed on the circular itself, on the envelope containing the circular, or on the newspaper containing the circular. Apparently reluctant to take on the powerful press establishment, the Postal Service says it has a monopoly on the first two but not the third. There is no valid distinction, and so the criterion on which my colleagues say this litigation turns, the presence or absence of an address, has no validity whatsoever.

I respectfully dissent.