MERVYN BLANK AND JUNE BLANK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13566–80.     Filed February 26, 1981.

*Donald L. Lawrence*, for the petitioners.
*Alan B. Horn*, for the respondent.

OPINION

PARKER, *Judge*: This matter is before the Court on respondent's motion to dismiss for lack of jurisdiction on the ground that the petition was not timely filed within the 90-day period prescribed by section 6213(a).[1] Petitioners filed a written objection to the motion and an evidentiary hearing was subsequently held at New York, N.Y. In opposition to respondent's motion, petitioners primarily argue that placing the petition in the hands of Air Couriers International on the 90th day, even though the petition was not delivered to the Court until the 91st day, brings them within section 7502 so as to satisfy the timely filing requirement. Alternatively, petitioners argue that the statutory notice of deficiency was defective in that it was not mailed to their "last known address" as required by section 6212(b).

Respondent determined a deficiency in petitioners' Federal income tax for 1976 in the amount of $13,806 and an addition to the tax under section 6653(a) in the amount of $690. On April 15, 1980, respondent mailed the statutory notice of deficiency to petitioners by certified mail addressed to:

P.O. Box 458 - Radio Circle
Mount Kisco, New York 10549

That was the address shown on petitioners' joint 1976 Federal income tax return. That address was the business address of petitioner Mervyn Blank and his corporation.

At some point prior to the mailing of the statutory notice, probably during the audit of the 1975 corporate return rather than the 1976 individual return, an accountant representing petitioners may have told the Internal Revenue Agent conducting the audit that petitioners were having marital difficulties. The agent was not told that petitioners were either separated or divorced, and he was not told that any statutory notice or other communication should be sent separately to each petitioner.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years involved in this case, unless otherwise stated.

Petitioner June Blank was at that time residing in the marital residence at 31 Whitlockville Road, Katonah, N.Y. 10536. Petitioner Mervyn Blank was at that time residing in an apartment located somewhere in Mount Kisco, N.Y. The address of that apartment was not furnished to the Internal Revenue Service at any time prior to the issuance of the statutory notice in this case, and, so far as the record discloses, has never been furnished to respondent or the Court. The record does not show that respondent was ever advised, prior to the issuance of the statutory notice, to send any notices or other communications to the Whitlockville Road address.[2]

Within 4 or 5 days after the statutory notice was mailed to petitioners on April 15, 1980, petitioner Mervyn Blank received it and within about 3 weeks he turned the statutory notice over to the certified public accountant (CPA) who prepared the petition in this case. That CPA is not admitted to practice in the Tax Court, and the petition was signed by the petitioners themselves. The 90th day after the mailing of the statutory notice of deficiency was Monday, July 14, 1980, which was not a legal holiday in the District of Columbia. Petitioners' CPA arranged to have the petition picked up on July 14, 1980, by Air Couriers International, a federally licensed common carrier with offices at 310 Madison Avenue, New York, N.Y. The petition was to be picked up at the CPA's office during the morning of July 14, 1980, and flown to Washington, D.C., where a messenger was to meet the plane, receive the petition, and hand-deliver it to the Tax Court that same day. Petitioners' CPA chose to use a common carrier rather than the U.S. Postal Service because he had experienced difficulties with the Postal Service. Due to "some foul-up with the common carrier service," the petition was not picked up by Air Couriers International until 8 or 9 p.m. on the evening of July 14, 1980, and was not hand-delivered to

---

[2]Apparently petitioners' Federal income tax returns for 1977 and subsequent years contained the Whitlockville Road address. Par. 1 of the petition filed in this Court stated that: "Mervyn Blank and June Blank both residing at 31 Whitlockville Road, Katonah, New York, 10536 are the petitioners." The record is not clear as to whether petitioners are in fact either separated or divorced or whether petitioner Mervyn Blank in fact now resides at the Whitlockville Road address. The Court can find that both petitioners reside in New York, petitioner June Blank in Katonah at the Whitlockville Road address, and petitioner Mervyn Blank either in Katonah or in Mount Kisco, N.Y. That should be sufficient for any venue purposes under sec. 7482.

the Tax Court until shortly after 9 a.m. on July 15, 1980, the 91st day after the mailing of the statutory notice to petitioners.

A petition for redetermination of a deficiency must be filed with this Court within 90 days (150 days in certain cases) after the notice of deficiency is mailed to the taxpayer, and that 90-day (or 150-day) period is jurisdictional. *Estate of Cerrito v. Commissioner*, 73 T.C. 896, 898 (1980); *Estate of Moffat v. Commissioner*, 46 T.C. 499 (1966). Since the petition in this case was not filed until the 91st day, it must be dismissed for lack of jurisdiction, unless petitioners can bring themselves within section 7502,[3] under which timely mailing can be treated as timely filing if certain statutory prerequisites are met. Enacted as part of the Internal Revenue Code of 1954, section 7502 was intended to alleviate the inequities and hardships to taxpayers whose petitions were delayed in being delivered to the Court through no fault of their own, but rather because the mails were not functioning properly. *Smetanka v. Commissioner*, 74 T.C. 715, 719 (1980); *Estate of Cerrito v. Commissioner, supra* at 898. The difficulty here is . hat petitioners did not mail their petition but sent it by a private delivery service. Petitioners say that the Court has never ruled upon this point, and argue that the Court

---

[3]SEC. 7502. TIMELY MAILING TREATED AS TIMELY FILING AND PAYING.

(a) GENERAL RULE.—

(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

(2) MAILING REQUIREMENTS.—This subsection shall apply only if—

(A) the postmark date falls within the prescribed period or on or before the prescribed date—

(i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or

(ii) for making the payment (including any extension granted for making such payment), and

(B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

(b) POSTMARKS.—This section shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary.

should find that a private delivery service comes within the spirit and purpose of section 7502 so that petitioners would be entitled to the benefits of that provision.[4]

Section 7502(a)(1) sets out the general rule that if any document that must be filed within a prescribed period is after that period or date "delivered by United States mail" to the office where it is to be filed, then the date of the U.S. postmark stamped on the envelope or other appropriate wrapper in which the document is mailed "shall be deemed to be the date of delivery." Section 7502(a)(2) then sets out the various mailing requirements such as mailing within the prescribed period or on or before the prescribed date and depositing the document "in the mail in the United States" in an envelope or other cover, postage prepaid, and properly addressed. The statute on its face seems to contemplate the use of the "United States mail" for delivery and not some private delivery service such as Air Couriers International.

Petitioners argue, however, that subsection (a) of section 7502 applies only where there is a postmark made by the U.S. Postal Service. They say that their situation comes within subsection (b) and the pertinent regulations thereto and calls for a different result. Subsection (b) of section 7502, in its entirety, reads: "This section shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary." Petitioners argue that the phrase "postmarks not made by the United States Postal Service" is broad enough to cover marks or notations made by private delivery services such as Air Couriers International. It is established that foreign postmarks do not satisfy the requirements of section 7502, even though those postmarks are official postmarks of a foreign government. *Cepedes v. Commissioner*, 33 T.C. 214 (1959) (Cuban postmark); see also *Electronic Automation Systems, Inc. v. Commissioner*, T.C. Memo. 1976–270 (Canadian postmark). However, those cases may not be wholly dispositive in determining the meaning of the phrase "postmarks not made by the United States Postal Service," since postmarks

---

[4]There is no officially published Tax Court opinion on this issue. However, the Court in a recent memorandum opinion rejected this same argument in a case where the petition had been sent by another private delivery service, Emery Express. See *Wilson v. Commissioner*, T.C. Memo. 1980–258.

of a foreign government could not in any event satisfy the mailing requirement of section 7502(a)(2)(B) that the document be "deposited in the mail *in the United States.*" (Emphasis added.)

It appears to the Court that the phrase "postmarks not made by the United States Postal Service" must refer to postmarks made by private postage meters, not to some other type of mark or notations which may be used by the various private delivery services. If the postmark is made by a private postage meter, the envelope or cover so marked is still deposited in the U.S. mail, is still transported through the U.S. mail, and is "delivered by United States mail," thus satisfying the basic requirements of the general rule set out in section 7502(a).

Petitioners want to read section 7502(b) in a vacuum and without any of the basic requirements of the general rule set out in section 7502(a). We think that section 7502(b) is subject to all of the basic requirements of the general rule set out in section 7502(a). Any other construction would do violence to the language and purpose of section 7502, and there is nothing in the pertinent Treasury regulations that would eliminate those basic requirements or that supports the result for which petitioners contend.

Section 301.7502–1(a) of the pertinent Procedural & Administrative Regulations sets out the general rule that:

Section 7502 is applicable only to those documents which come within the definition of such term provided by paragraph (b) of this section and only if the document is mailed in accordance with paragraph (c) of this section and is delivered in accordance with paragraph (d) of this section.

A petition is specifically listed as one of the documents covered by these regulations. Sec. 301.7502–1(b)(1)(ii), Proced. & Admin. Regs. The next question is whether the petition was "mailed in accordance with paragraph (c)." One of the mailing requirements of paragraph (c) is that the petition "must be deposited within the prescribed time in the mail in the United States," and a document is so deposited "when it is deposited with the domestic mail service of the United States Post Office." Sec. 301.7502–1(c)(1)(ii), Proced. & Admin. Regs.

Petitioners, however, place their reliance upon section 301.7502–1(c)(1)(iii)(*b*), Proced. & Admin. Regs., dealing with postmarks "made other than by the United States Post Office," but there is nothing in that regulation that in any way changes

the immediately preceding section 301.7502–1(c)(1)(ii), Proced. & Admin. Regs., requirement that the envelope or wrapper must be deposited "in the mail in the United States."[5] In fact, the references in the first sentence to "the same class of mail" and the references in the second sentence to establishing that the document "was actually deposited in the mail before the last collection of the mail from the place of deposit which was postmarked (except for the metered mail) by the United States Post Office" show that this regulation too requires deposit in the United States mail. Sec. 301.7502–1(c)(1)(iii)(*b*), Proced. & Admin. Regs. The next question is whether the petition was "delivered in accordance with paragraph (d)," a requirement separate and apart from the mailing requirements of paragraph (c). The delivery requirements in paragraph (d) state that "Section 7502 is not applicable unless the document is delivered by United States mail to the agency, officer, or office with which it is required to be filed." Sec. 301.7502–1(d)(1), Proced. & Admin. Regs.

There is nothing in the language of section 7502 or in the regulations promulgated pursuant thereto that would permit the Court to treat a private delivery service the same as the United States mail for purposes of the timely mailing as timely filing provisions. The Congress, in a carefully crafted statute, used the terms "delivered by United States mail," "mailed," and

---

[5]Sec. 301.7502–1(c)(1)(iii)(*b*), Proced. & Admin. Regs., provides that:

"(*b*) If the postmark on the envelope or wrapper is made other than by the United States Post Office, (*1*) the postmark so made must bear a date on or before the last date, or the last day of the period, prescribed for filing the document, and (*2*) the document must be received by the agency, officer, or office with which it is required to be filed not later than the time when a document contained in an envelope or other appropriate wrapper which is properly addressed and mailed and sent by *the same class of mail* would ordinarily be received if it were postmarked at the same point of origin by the United States Post Office on the last date, or the last day of the period, prescribed for filing the document. However, in case the document is received after the time when a document so mailed and so postmarked by the United States Post Office would ordinarily be received, such document will be treated as having been received at the time when a document so mailed and so postmarked would ordinarily be received, if the person who is required to file the document establishes (i) *that it was actually deposited in the mail before the last collection of the mail from the place of deposit which was postmarked (except for the metered mail) by the United States Post Office* on or before the last date, or the last day of the period, prescribed for filing the document, (ii) that the delay in receiving the document was due to a delay in the transmission of the mail, and (iii) the cause of such delay. If the envelope has a postmark made by the United States Post Office in addition to the postmark not so made, the postmark which was not made by the United States Post Office shall be disregarded, and whether the envelope was mailed in accordance with this subdivision shall be determined solely by applying the rule of (*a*) of this subdivision. [Emphasis added.]"

"deposited in the mail." For more than 100 years, the U.S. Government has had a monopoly in the delivery of mail. There are criminal statutes, the so-called "Private Express Statutes," that prohibit competition by private express companies in the carriage of mail. See 18 U.S.C. Secs. 1694–1699 (1976), and 39 U.S.C. Secs. 601–606 (1976); *Associated Third Class Mail v. U.S. Postal Serv.*, 600 F.2d 824 (D.C. Cir. 1979), cert. denied 444 U.S. 837 (1979); *United States v. Black*, 569 F.2d 1111 (10th Cir. 1978), cert. denied 435 U.S. 944 (1978). When the Congress enacted the timely mailing as timely filing provisions, using terms such as "delivered by United States mail," we cannot say that the Congress intended to include delivery by private delivery services.

Lastly, petitioners argue what they perceive to be the equities of their case, urging that the petition was only 1 day late and was received at the Court shortly after 9 a.m. on the 91st day. While the Court believes a taxpayer should be able to have his day in Court without first paying the deficiency determined by respondent, the Congress, in creating the prepayment forum (deficiency jurisdiction) in this Court, placed a time limit on a taxpayer's access to the Court. In section 7502, the Congress liberalized the time requirements somewhat by permitting timely mailing to be treated as timely filing in some cases. If that is to be further liberalized to extend to use of a private delivery service instead of the U.S. mails, that change in the law must come from the Congress and not from this Court.

We hold that section 7502 does not apply when delivery is made by a private delivery service rather than by the U.S. Postal Service, and the petition in this case was not timely filed.

Petitioners argue alternatively that the 90-day period for filing their petition never started to run because the statutory notice of deficiency was not sent to their "last known address" as required by section 6212(b).[6] Normally the taxpayer's "last known address" is the address shown on the tax return unless the taxpayer has notified respondent of a change of address. *Keeton v. Commissioner*, 74 T.C. 377, 382 (1980); *Lifter v. Commissioner*, 59 T.C. 818, 821 (1973). Here the notice of deficiency was mailed to petitioners at the address shown on

---

[6]Petitioners, however, have not moved to dismiss on that ground. See *O'Brien v. Commissioner*, 62 T.C. 543, 548 (1974).

their return, but petitioners argue that it should have been mailed to the Whitlockville Road address in Katonah, N.Y. Petitioners never notified respondent, and respondent had no way to know that they wished any notices or other communications sent to that address or to any other address than the return address. Respondent properly sent the notice of deficiency to the address shown on the face of the tax return, and that was petitioners' "last known address" for purposes of section 6212(b).

Respondent's motion to dismiss for lack of jurisdiction will be granted.

*An appropriate order will be entered.*