

# THE ATTORNEY GENERAL
## OF TEXAS

August 29, 1089

**JIM MATTOX**
**ATTORNEY GENERAL**

Dr. William H. Cunningham          Opinion No.   JM-1091
President
University of Texas System        Re:   Use of campus mail ser-
201 W. 7th Street                 vices at state universities
Austin, Texas 78701               (RQ-1644)


Dear Dr. Cunningham:

You have requested  the advice  of this  office on  the following matter:

> We request your  opinion as  to whether  a faculty or staff  organization that has  been certified by an official of the University to be  an  organization  whose activities    and purposes 'are  academically relevant  to  the educational mission of the University' may be permitted to  use  the  campus  mail  service without violating Section  51 of Article  III of the  Texas  Constitution  or  the  federal statutes relating to the private carriage  of letters without the payment of postage.

You do  not describe  any particular  faculty or  staff organization.  We assume from your letter, however, that you are asking about  organizations that  are neither  supported nor sponsored  by the  university but  whose activities  and purposes the  university  has  recognized  as  "academically relevant to the educational mission" of the university.  <u>See generally</u> Attorney  General  Opinion  H-511  (1975)  (use  of university  facilities   by   student   organizations   with religious affiliation).

We turn  first  to 'your question  about  article  III, section 51, of the Texas Constitution, which provides:

> The Legislature  shall  have no  power  to make any grant or authorize the making of any grant of  public  moneys to  any  individual, association  of  individuals,  municipal   or other  corporations   whatsoever;   provided, however,  the  Legislature  may grant  aid  to

p. 5707

> indigent and disabled Confederate soldiers and sailors under such regulations and limitations as may be deemed by the Legislature as expedient, and to their widows in indigent circumstances under such regulations and limitations as may be deemed by the Legislature as expedient; provided that the provisions of this Section shall not be construed so as to prevent the grant of aid in cases of public calamity.

Article III, section 51, has been construed to prohibit donations of public property as well as public funds. Rhoads Drilling Co. v. Allred, 70 S.W.2d 576, 582 (Tex. 1934); Attorney General Opinions MW-373 (1981); WW-790 (1960); WW-153 (1957). The use of the campus mail system would be the use of public property.

Article III, section 51, does not prohibit all uses of public property by private entities. Such use is permissible if it is for a public purpose and if there are controls to assure that the public purpose is actually achieved. Attorney General Opinions MW-373 (1981); MW-89 (1979); H-1309, H-1260 (1978). The determination of whether the use of campus mail by a private organization serves a public purpose is to be made, in the first instance, by the university. Attorney General Opinion MW-373 (1981). The fact that an organization is a private one would not preclude a finding that the use of the campus mail by the organization serves a public purpose. On the other hand, a determination that the purposes of the organization are "academically relevant to the educational mission" of the university is not the equivalent of a determination that the use of the campus mail by that organization serves a public purpose. Indeed, it is certainly possible that the use of the campus mail by an organization for a particular type of mailing would serve a public purpose, whereas the use of the campus mail by the same organization for another type of mailing would not.

You also ask about the federal Private Express Statutes, 18 U.S.C. §§ 1693-1699; 39 U.S.C. §§ 601-606, which "establish the postal monopoly and generally prohibit the private carriage of letters over postal routes without the payment of postage to the United States Postal Service." Regents of Univ. of California v. Public Employment Relations Bd., 108 S.Ct. 1404, 1405 (1988). See generally U.S. House of Representatives, Committee on Post Office and Civil Service, Statutes Restricting Private Carriage of Mail and Their Administration (1973). The statutes of particular

concern to you are sections 1694 and 1696 of title 18 and section 601 of title 39.

Section 1694 of title 18 provides:

Whoever, having charge or control of any conveyance operating by land, air, or water, which regularly performs trips at stated periods on any post route, or from one place to another between which the mail is regularly carried, carries, otherwise than in the mail, any letters or packets, except such as relate to some part of the cargo of such conveyance, or to the current business of the carrier, or to some article carried at the same time by the same conveyance, shall, except as otherwise provided by law, be fined not more than $50.

Section 1696 of title 18 provides:

(a) Whoever establishes any private express for the conveyance of letters or packets, or in any manner causes or provides for the conveyance of the same by regular trips or at stated periods over any post route which is or may be established by law, or from any city, town, or place to any other city, town, or place, between which the mail is regularly carried, shall be fined not more than $500 or imprisoned not more than six months, or both.

This section shall not prohibit any person from receiving and delivering to the nearest post office, postal car, or other authorized depository for mail matter any mail matter properly stamped.

(b) Whoever transmits by private express or other unlawful means, or delivers to any agent thereof, or deposits at any appointed place, for the purpose of being so transmitted any letter or packet, shall be fined not more than $50.

(c) This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation, or by special messenger employed for the particular occasion only. Whenever more

than twenty-five such letters or packets are conveyed or transmitted by such special messenger, the requirements of section 601 of title 39, shall be observed as to each piece.

Section 601 of title 39, which permits private postal services under some circumstances, provides:

(a) A letter may be carried out of the mails when --

(1) it is enclosed in an envelope;

(2) the amount of postage which would have been charged on the letter if it had been sent by mail is paid by stamps, or postage meter stamps, on the envelope;

(3) the envelope is properly addressed;

(4) the envelope is so sealed that the letter cannot be taken from it without defacing the envelope;

(5) any stamps on the envelope are canceled in ink by the sender; and

(6) the date of the letter, of its transmission or receipt by the carrier is endorsed on the envelope in ink.

(b) The Postal Service may suspend the operation of any part of this section upon any mail route where the public interest requires the suspension.

In Regents of Univ. of California v. Public Employment Relations Bd., supra, the Supreme Court considered whether the use of the internal mail service of the University of California by a public employees union would violate the private express statutes. The court pointed out that the exception in section 1694 of title 18 for letters or packets relating "to the current business of the carrier" -- also known as the "letters-of-the-carrier" exception -- was what allowed the university to operate an internal mail system at

all.[1]  The question in the <u>University of California</u> case was whether that exception would permit the university mail system to carry letters from the union to certain university employees.

The union argued that California had made harmonious labor relations the business of its state university.  The court commented that the state could define the business of its institutions as it saw fit but that, for purposes of the federal postal statutes, that principle had its limits.  Otherwise, the court wrote, "a State could define delivery of mail to all its citizens as the 'current business' of some state agency and thereby defeat the postal monopoly."  108 S.Ct., at 1409.  The court declined to delineate the exact scope of the "letters-of-the-carrier" exception, but it concluded that the exception was a narrow one and that the union's letters were not close enough to the

---

1.  On its face, the "letters-of-the-carrier" exception appears to be an exception from the prohibition set out in section 1694 of title 18, not from the Private Express Statutes generally.  In the <u>University of California</u> case, however, the Supreme Court treated the exception as if it would exempt a carrier from the Private Express Statutes generally.

We note that the Postal Department has adopted a regulation that purports to create a letters-of-the-carrier exception from the Private Express Statues generally.  That regulation provides:

> The sending or carrying of letters is permissible if they are sent by or addressed to the person carrying them.  If the individual actually carrying the letters is not the person sending the letters or to whom the letters are addressed, then such individual must be an officer or employee of such person and the letters must relate to the current business of such person.

39 C.F.R.  § 310.3(b)(1) (citation omitted).  At least one circuit court has held that it is within the authority of the Postal Service to promulgate regulations affecting the criminal, as well as the civil, provisions of the Private Express Statutes.  <u>Associated Third Class Mail Users v. United States Postal Serv.</u>, 600 F.2d 824, 826 n.5 (D.C. Cir.), <u>cert. denied</u>, 444 U.S. 837 (1979).

university's affairs to come within the exception. <u>Id.</u> at 1410.

Your question is whether the "letters-of-the-carrier" exception permits the use of campus mail at the University of Texas by groups that the university determines to be "academically relevant to the educational mission" of the university. The <u>University of California</u> decision requires that, in order for letters to come within the "letters-of-the-carrier" exception, there must be a very close connection between the business of the carrier and the content of the letters. Consequently, we think that a finding that an organization is academically relevant to the educational mission of the University of Texas is insufficient by itself to bring letters of the organization within the "letters-of-the-carrier" exception to the Private Express Statutes. Whether particular letters of a particular organization would come within the exemption is a fact question to be resolved in accordance with applicable federal law standards.[2]

You next ask about the effect of the so-called "private-hands" exception, which is based on section 1696(c) of title 18:

> This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation.

<u>See also</u> 39 C.F.R. § 310.3(c) (regulation containing "private-hands" exception). The Supreme Court discussed the "private-hands" exception in the <u>University of California</u> case:

> Congress used unambiguous language to accomplish its goals. Persons or entities other than the United States Postal Services -- <u>i.e.</u>, 'private hands' -- may carry letters without violating the Private Express Statutes only so long as they do not receive any form of benefit from the sender -- <u>i.e.</u>, 'without compensation.' While the pivotal term, 'compensation,' is not further defined,

---

2. We note that the postal service issues advisory opinions on questions arising under parts 310 and 320 of the Code of Federal Regulations. 39 C.F.R. § 310.6.

> Congress in no way qualified its reach. We therefore give effect to congressional intent by giving the language its normal meaning. A dictionary from the period during which the private-hands exception was enacted illustrates the general nature of the term; it defines compensation to include 'that which supplies the place of something else' and 'that which is given or received as an equivalent for services, debt, want, loss, or suffering.' N. Webster, An American Dictionary of the English Language 235 (C. Goodrich ed. 1849). Accordingly, we hold that the private-hands exception is available only when there is no compensation of any kind flowing from the sender to the carrier.

108 S.Ct. at 1410. The court then examined the relationship between the union and the university and concluded that carriage of the union's letters would not be without compensation:

> By delivering the Union's letters, appellant would perform a service for its employees that they would otherwise pay for themselves, through their union dues. This service would become part of the package of monetary and nonmonetary benefits that appellant provides to its employees in exchange for their services. In our view, carriage of the Union's letters pursuant to such an exchange of benefits necessarily means that the carriage is not 'without compensation.' Accordingly, it does not fall within the private-hands exception.

108 S.Ct. at 1412.

In short, the "private-hands" exception is applicable only if the carrier receives no quid pro quo. The question of what constitutes a quid pro quo for purposes of the Private Express Statutes is a question of federal law. Whether a quid pro quo exists in a particular situation is a fact question. A finding that an organization is "academically relevant to the educational mission" of the

university is irrelevant to the question of whether a quid pro quo exists.[3]

You also ask about 39 C.F.R. section 320.4, which provides:

> The operation of 39 U.S.C. 601(a)(1) through (6) and § 310.2(b)(1) through (6) of this chapter is suspended on all post routes to permit colleges and universities to carry in their internal mail systems the letters of their <u>bona fide</u> student or faculty organizations to campus destinations. This suspension does not cover the letters of faculty members, students, or organizations other than <u>bona fide</u> student or faculty organizations of the carrying college or university. Colleges and universities choosing to provide their student or faculty organizations access to their internal mail systems are responsible for assuring that only letters of <u>bona fide</u> student or faculty organizations addressed to campus destinations are carried. (<u>See</u> § 310.4) For purposes of this suspension, 'internal mail systems' are those which carry letters on, between, and among the various campuses of a single college or university and which operate in accordance with the <u>Letters of the carrier</u> exception in 39 CFR 310.3(b).

Whether the organizations you ask about come within that provision raises fact questions. It would be appropriate to seek the opinion of the postal service in regard to whether

---

3. In order for use of university property by a private organization to pass muster under article III, section 51, of the Texas Constitution, the university must receive an adequate quid pro quo. <u>See generally</u> Braden, <u>The Constitution of the State of Texas</u>, vol. 1, at 229-36 (1977). What constitutes a quid pro quo for purposes of article III, section 51, might not be the same as what constitutes a quid pro quo for purposes of 18 U.S.C., section 1696(c). It is possible, however, that the existence of a quid pro quo that would make use of campus mail by a private organization permissible for purposes of article III, section 51, would make the use impermissible under the Private Express Statutes.

specific organizations come within that exception. We note, however, that the regulation refers to colleges and universities providing access to "their" faculty organizations. That language indicates that the regulation applies to organizations that are in some way affiliated with the university. We also note that the regulation only purports to suspend the application of 39 U.S.C. section 601(a)(1) through (6) and 39 C.F.R. section 310.2(b)(1) through (6). It does not purport to suspend the application of either section 1694 or section 1696 of title 18.

### S U M M A R Y

Article III, section 51, of the Texas Constitution, would permit the use of the campus mail system of the University of Texas by a private organization if the use is for a public purpose. A finding that the private organization in question is "academically relevant to the educational mission" of the university is not the equivalent of a finding that a particular use of the campus mail system serves a public purpose.

Determinations as to whether organizations come within various exceptions to the Private Express Statutes, 18 U.S.C. §§ 1693-1699; 39 U.S.C. §§ 601-606, involve questions of fact that are to be resolved in accordance with federal law standards.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General